Ellen Jane WEISER, Everlela Boston, Simone Collier, Ellen Glick, Anthony Harris and Barry Warren, Plaintiffs,

v.

Edward I. KOCH, as Mayor of the City of New York, George Gross as Administrator of the New York City Human Resources Administration, and Cesar A. Perales, as Commissioner of the New York State Department of Social Services, and all of their successors, agents, servants, employees and those persons in active concert or participation with them, Defendants.

No. 84 Civ. 1837 (DNE).

United States District Court, S.D. New York.

April 15, 1986.

MYF Legal Services, Inc., New York City, for plaintiffs; Norman Siegel, Wayne G. Hawley and K. Diallo Scott, and Coalition for the Homeless, Robert M. Hayes, of counsel.

Robert Abrams, Atty. Gen., State of N.Y., for defendant Cesar A. Perales; Stanley Camhi and Lillian Z. Cohen, of counsel.

Frederick A.O. Schwarz, Jr., Corp. Counsel, for defendants Edward I. Koch and George Gross; Antonia Levine and Elizabeth Logan, Asst. Corp. Counsels, New York City, of counsel.

## OPINION AND ORDER

EDELSTEIN, District Judge:

Plaintiffs, former and present residents [1] at New York City's municipal shelter system, seek an injunction, declaratory relief

---

1. At the time this complaint was filed, plaintiffs Everlela Boston, Simone Collier and Barry Warren were residing at one of New York City's several municipal shelters. Plaintiffs Ellen Jane Weiser, Ellen Glick and Anthony Harris are former residents of New York City's municipal shelter system.

and damages under 42 U.S.C. § 1983. Plaintiffs allege that their ejection from the New York City municipal shelter system violated the due process and equal protection clauses of the fourteenth amendment and the New York Constitution.[2] Plaintiffs further allege violations of various New York state statutes, article XVII, § 1 of the New York Constitution and the first amendment to the United States Constitution.[3] Jurisdiction is conferred on the court by 28 U.S.C. §§ 1343 and 1331. Plaintiffs also seek to invoke this court's pendent jurisdiction.

Plaintiffs have moved for partial summary judgment on the issue whether the eviction of plaintiffs from municipal shelters violated their due process rights secured by the United States Constitution. The New York City ("City") defendants, have cross-moved for partial summary judgment. The New York State ("State") defendant has moved for judgment on the pleadings.[4]

State defendant's motion for judgment on the pleadings is granted. The court will not provide injunctive or declaratory relief against any defendant because plaintiffs lack standing to obtain equitable relief. Furthermore, the eleventh amendment bars adjudication of the damage claims against State defendant in federal court. The

---

**2.** New York's due process clause is contained in article one, section 6 of the New York Constitution. Its equal protection clause is contained in article one, section 11. Plaintiffs' third and fourth causes of action rely on these provisions.

**3.** Plaintiffs' fifth cause of action states that defendants ejection of plaintiffs violated 18 N.Y.C. R.R. §§ 358.8(c)(1) and 494.4(d). Plaintiffs' sixth cause of action alleges that "by failing to obtain review and approval by defendant Perales of their policies and practices of ejecting plaintiffs from municipal shelters, defendants ... are violating section 20(3)(a) of the New York Social Service Law." Plaintiffs' seventh cause of action alleges that by failing to provide indigent homeless men and women with shelter following their ejectment, City defendants are violating article XVII, § 1 of the New York Constitution, §§ 62(1) and 131(1) & (3) of the New York Social Services Law, and § 604-1.-0(b) of the New York City Administrative Code. Finally, plaintiffs Collier and Glick assert that their first amendment rights were violated when they were ejected from shelters after communicating with the news media about the poor shelter conditions.

**4.** The City defendants, Mayor Edward I. Koch, and George Gross, Administrator of the New York City Human Resources Administration are sued in their official capacity. The New York State defendant is Cesar A. Perales, Commissioner of the New York Department of Social Services. He is also sued in his official capacity.

On July 3, 1984, this court denied plaintiffs' motion to certify these claims as a class action because relief awarded to the individually named plaintiffs would adequately protect all proposed class members. Plaintiff Weiser has filed the motions. Although the motions are filed in her name, the court considers the motion to be brought on behalf of all named plaintiffs. For simplification, the motion papers focus on the facts leading to Weiser's ejection. However, the facts surrounding the other plaintiffs' ejection would not change the court's analysis of the legal issues. *See infra* note 5.

Plaintiffs have only moved for partial summary judgment "to establish defendants' liability for depriving [Weiser] of her right to shelter without due process of law." Notice of Motion for Partial Summary Judgment at 1–2. In their memorandum of law, plaintiffs only raise a claim under the fourteenth amendment's due process clause, although they state that "[t]he homeless are entitled under state law to emergency shelter." Memorandum of Law in Support of Plaintiff Weiser's Motion for Partial Summary Judgment at 2. City defendants cross-moved for this court to grant "partial summary judgment in their favor, on the grounds that plaintiff Weiser has no interest in permanent shelter to which the due process guarantees of the Fourteenth Amendment attach...." In the City defendants memorandum of law, they assert that article XVII, § 1 of the New York State Constitution does not establish a right to shelter. Memorandum of law of Defendants Koch and Gross in Opposition to Plaintiffs' Motion for Partial Summary Judgment and in Support of Cross-Motion for Partial Summary Judgment at 8. This issue is contested by plaintiffs. Memorandum of law in Opposition to City Defendants' Cross-Motion for Partial Summary Judgment in Opposition to State Defendant's Motion for Judgment on the Pleadings, and in Further Support of Plaintiff's Motion for Partial Summary Judgment at 6. The court will thus consider the partial summary judgment motions as raising the federal and state due process claims along with plaintiff's article XVII claim. Cause of Action numbers 2, 4, 5, 6, and 8 are not before the court. Further, cause of action number 7 is before the court only to the extent that it raises a violation of article XVII, § 1 of the New York Constitution. Of course, when considering the State defendant's motion for judgment on the pleadings, all causes of action contained in the complaint must be considered.

court declines, at this time, to exercise pendent jurisdiction over plaintiffs' state law claims against the City. Finally, the court abstains from consideration of plaintiffs' federal due process claim for damages against the City until the decision in *McCain v. Koch,* 127 Misc.2d 23, 484 N.Y. S.2d 985, is rendered by the New York Appellate Division, First Department.

## I. FACTUAL BACKGROUND

City and state defendants operate a system of 18 municipal shelters which provide food and lodging to homeless individuals. Each municipal shelter is operated by the Human Resources Administration, a city agency under Mayor Koch's control. Funding for municipal shelters is divided between the state and city governments. The State Department of Social Services promulgates regulations governing the operation of these shelters. The shelter services are provided to any person who requests temporary housing, although some services are provided only on a short term basis. Affidavit of George Hicks, at 3.

In a letter given to all City shelter residents, the City has established that shelter residents are subject to removal for one of three reasons: (1) assaulting or physically attacking another person, (2) illegally consuming drugs on the premises; or (3) intentionally setting fire to the premises or causing damage to the facility or equipment. Letter from Shelter Care Center for Women Annex, 282 East Third Street, to Shelter Residents. Prior to the commencement of this action, defendants had not promulgated procedures for determining the veracity of an allegation that a shelter resident had committed one of the above infractions.

Plaintiff Ellen Jane Weiser[5] ("Weiser") is a 44 year old woman who resided at City defendant's shelters at various times between September 19, 1983 and January 23, 1984. On January 21, 1984, Weiser was discharged from Lenox Hill Hospital following a two week hospitalization. From January 21, 1984 through January 23, 1984, Weiser resided at the 51st Street Women's Shelter. On January 22, 1984, she observed another resident, Acksulia Peux ("Peux"), throwing Weiser's and other residents' clothes on the floor of a shelter room. Weiser contends that she reported this incident to the shelter staff. Staff members accompanied Weiser to her room and told her to clean up the mess. Plaintiff Weiser replied that she did not make the mess but agreed to pick up her own belongings. The following morning, January 23, 1984, plaintiff noticed that a pair of her pants was missing. Weiser found her pants in Peux's plastic bag and took the pants to the cafeteria to confront Peux. Weiser alleges that Peux then kicked her in the groin, and in self-defense, Weiser pushed the attacking Peux away. The altercation was stopped by shelter workers and both women were escorted to offices in the shelter.

Weiser contends that she was never questioned about what had occurred and was summarily suspended from the municipal shelter system for seven days. Weiser further alleges that when she protested, the shelter staff threatened to double or triple her penalty. She was not given written notice of her discharge, or an opportunity to explain her side of the story at a hearing prior to the ejection decision. Further, she was not provided or informed of any opportunity for a post ejection appeal. Defendants concede that shelter residents who are ejected from the shelter are not given a hearing with an opportunity to confront witnesses or an opportunity to appeal. Defendants contend, however, that Weiser was given an opportunity to explain her side of the story to shelter employees. In addition, Weiser alleges that she was not given money for carfare or transportation tokens, or the names of alternate private shelters. She claims that when she left the 51st Street Shelter, she was attacked again by the same woman outside the shelter. Weiser then fled back into the shelter, but was again ordered to

**5.** The differences between the plaintiffs' fact situations are not material on the issue of the constitutional sufficiency of the ejection procedures. The court will concentrate on the facts alleged regarding plaintiff Weiser in deciding this motion.

leave. Later that day, January 23, 1984, Weiser was turned away from another city shelter at 350 Lafayette Street, where she was advised that the 51st Street shelter had barred her from the municipal shelter system for seven days. Weiser alleges that she then walked over 150 blocks, from 350 Lafayette Street to 125th Street where she stayed with a friend overnight. As of January 25, 1984, plaintiff Weiser has been living at a private shelter for homeless individuals.

## II. JURISDICTION

### A. STANDING TO OBTAIN EQUITABLE RELIEF

█ Although the parties did not address whether plaintiffs have satisfied the requisite standing criteria, those who seek to invoke the jurisdiction of the federal courts must satisfy the threshold requirement imposed by Article III of the Constitution by alleging an actual case or controversy. *Flast v. Cohen*, 392 U.S. 83, 94–101, 88 S.Ct. 1942, 1949–1953, 20 L.Ed.2d 947 (1968). Plaintiffs must demonstrate a "personal stake in the outcome" in order to "assure that concrete adverseness which sharpens the presentation of issues" necessary for the proper resolution of constitutional questions. *Baker v. Carr*, 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663 (1962).

Under the Supreme Court's holding in *City of Los Angeles v. Lyons*, 461 U.S. 95, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983), there must be sufficient immediacy, reality and causality between defendants' conduct and plaintiffs' allegations of future injury to warrant declaratory and injunctive relief [6] against either the City or the State. *Id.* at 111, 103 S.Ct. at 1670. In *Lyons*, plaintiff sought damages and injunctive and declaratory relief, alleging that Los Angeles police officers had stopped him for a traffic code

violation and, without provocation or justification, had seized him and applied a chokehold rendering him unconscious. The plaintiff sought to prohibit the Los Angeles police from using control holds, except in situations where the victim appeared to be threatening immediate use of deadly force.

The Supreme Court stated that Lyons' standing to seek an injunction depended on whether he was likely to suffer future injury from the use of a chokehold by police officers. *Id.* at 105, 103 S.Ct. at 1666. The Court reasoned that Lyons did not "establish a real and immediate threat that he would again be stopped for a traffic violation, or for any offense by an officer or officers who would illegally choke him into unconsciousness without any provocation or resistance on his part." *Id.* The Court held that because there was not "a sufficient likelihood that he will again be wronged in a similar way," Lyons was not entitled to an injunction. *Id.* at 100, 103 S.Ct. at 1664. The critical standing inquiry is whether a plaintiff is "realistically threatened by a repetition of his experience ..." or whether the claim is speculative. *Id.* at 109, 103 S.Ct. at 1669; *see O'Shea v. Littleton*, 414 U.S. 488, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974); *Curtis v. City of New Haven*, 726 F.2d 65, 67 (2d Cir.1984).

Plaintiffs have failed to demonstrate a case or controversy with the City or State within the meaning of *Lyons* that would justify the equitable relief sought. Plaintiffs do not allege, nor is it likely, that they will be evicted imminently from a municipal shelter without adequate due process protection. *See O'Shea v. Littleton*, 414 U.S. at 497, 94 S.Ct. at 676; *Diotte v. Blum*, 585 F.Supp. 887, 896–97 (N.D.N.Y.1984). The most that can be said for plaintiffs' standing is that *if* they are again accused of violating a shelter rule, they *may* be suspended without due process of law. *City*

---

**6.** In this case, plaintiffs seek a declaratory judgment that defendants' ejection of homeless persons without written notice, a pre-termination hearing and adherence to lawful standards violates the fourteenth amendment to the United States Constitution, the New York Constitution, the New York Social Services Law, and the New York Code of Rules and Regulations.

Plaintiffs seek an injunction ordering defendants to cease and desist the ejection of homeless men and women from municipal shelters without providing them with written notice, a pre-termination hearing and adherence to lawful standards governing any ejection of the homeless from municipal shelters.

*of Los Angeles v. Lyons,* 461 U.S. at 102, 103 S.Ct. at 1665; *O'Shea v. Littleton,* 414 U.S. at 497, 94 S.Ct. at 676. It is assumed that plaintiffs will conduct their activities so that they are not accused of violating shelter rules. *See City of Los Angeles v. Lyons,* 461 U.S. at 103, 103 S.Ct. at 1665; *O'Shea v. Littleton,* · 414 U.S. at 496, 94 S.Ct. at 676. Thus, plaintiffs lack standing for obtaining federal injunctive or declaratory relief against either the City or State defendants.[7]

## B. PENDENT JURISDICTION

### 1. Constitutional Power to Adjudicate Pendent State Claims

■ This is an action alleging both federal and state constitutional and state statutory claims. See *supra* notes 2–4 and accompanying text. The Supreme Court has outlined a three part analysis which a federal court must apply before concluding that it has the power to adjudicate a pendent state claim. The first consideration is whether there is a substantial federal question, *United Mine Workers v. Gibbs,* 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966); `see Hagans v. Lavine,` 415 U.S. 528, 538, 94 S.Ct. 1372, 1379, 39 L.Ed.2d 577 (1974) and "the relationship between [the federal] claim and the state claim permits the conclusion that the entire action before the court comprises but one constitutional 'case.'" *United Mine Workers v. Gibbs,* 383 U.S. at 725, 86 S.Ct. at 1138. For this requirement to be satisfied, [t]he state and federal claims must derive

7. Plaintiffs, in seeking injunctive relief, also cannot claim that this case falls within the two exceptions to the mootness doctrine: First, that a case does not become moot merely because the complained of conduct has ceased; and second, that because plaintiffs' claim is "capable of repetition yet evading review," the claim should be heard. *City of Los Angeles v. Lyons,* 461 U.S. at 109, 103 S.Ct. at 1669. As stated in *Lyons:*

> The issue here is not whether the claim has become moot but whether Lyons meets the preconditions for asserting an injunctive claim in a federal forum. The equitable doctrine that cessation of the challenged conduct does not bar an injunction is of little help in this respect, for Lyons' lack of standing does not rest on the termination of the police practice but on the speculative nature of his claim that he will again experience injury as the result of that practice even if continued.
>
> The rule that a claim does not become moot where it is capable of repetition, yet evades review, is likewise inapposite. Lyons' claim that he was illegally strangled remains to be litigated in his suit for damages; in no sense does that claim "evade" review. Furthermore, the capable-of-repetition doctrine applies only in exceptional situations, and generally only where the named plaintiff can make a reasonable showing that he will again be subjected to the alleged illegality.

461 U.S. at 109, 103 S.Ct. at 1669.

Thus, assuming *arguendo* plaintiffs had standing to seek an injunction, they could not obtain an injunction because they failed to show irreparable injury, or a real or immediate threat that they will be wronged again. Further, any injury would not go unrecompensed because for that injury they have an adequate remedy at law—an action for damages. *Id.; Diotte v. Blum,* 585 F.Supp. at 897.

On September 26, 1984, after the commencement of this action, the Human Resources Administration promulgated new procedures for suspension of shelter residents. Procedure No. BAIS 84–5. The new procedure requires that a social service worker or senior supervisor interview the accused resident and afford that individual an opportunity either to explain what occurred or to deny involvement. *Id.* All witnesses, including residents and staff, "should" be interviewed. The supervisor may reinterview the client, victim and any other witnesses prior to making a final report to the shelter director, who has the final authority to evict residents. There is no appeal procedure. Because of this holding that plaintiffs lack standing to obtain equitable relief, this court need not address whether the new procedures enacted by the Human Resources Administration render the issue of equitable relief moot.

Even if plaintiffs had standing, prospective injunctive relief could still not be awarded on the state law claims against the State in light of *Pennhurst State School and Hospital v. Halderman,* 465 U.S. 89, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984). The Supreme Court reasoned that because of the federalism problems inherent in making one sovereign appear against its will in the courts of the other, there is a constitutional restriction in a case such as this. The Supreme Court concluded: "[a] claim that state officials violated state law in carrying out their official responsibility is a claim against the state that is protected by the Eleventh Amendment." *Id.* at 121, 104 S.Ct. at 919. In essence, *Pennhurst* held that pendent jurisdiction does not permit an evasion of the state immunity guaranteed by the eleventh amendment. *Id.* at 123, 104 S.Ct. at 920. Accordingly, this court would lack jurisdiction to grant injunctive relief ordering state officials to conform their conduct to state law.

from a common nucleus of operative fact" such that a plaintiff "would ordinarily be expected to try them all in one judicial proceeding." *Id.* In this action, the federal and state claims clearly permit the conclusion that the entire action constitutes but one constitutional case. Indeed, the federal and state claims in this case derive from the same facts—the suspension of plaintiffs from shelters without a hearing.[8] Further, plaintiffs' alleged deprivation clearly raises a substantial federal question. *Hagans v. Lavine,* 415 U.S. at 535–43, 94 S.Ct. at 1378–82.

Second, in *Aldinger v. Howard,* 427 U.S. 1, 19, 96 S.Ct. 2413, 2422, 49 L.Ed.2d 276 (1976) and *Owen Equipment and Erection Company v. Kroger,* 437 U.S. 365, 370–77, 98 S.Ct. 2396, 2400–04, 57 L.Ed.2d 274 (1978), the Supreme Court determined that a federal court must also consider the intent of Congress, before concluding that it has the power to exercise pendent jurisdiction over nonfederal claims or parties.[9] The specific statute that confers jurisdiction over the federal claim must be interpreted to see whether Congress has expressly or by implication negated the exercise of jurisdiction. *Aldinger v. Howard,* 427 U.S. at 17–18, 96 S.Ct. at 2421–22. Courts have routinely not questioned their statutory power in § 1983 actions to hear pendent claims when new parties are not brought into the lawsuit, thereby holding that Congress has not expressly or by negative implication barred state law claims from suit in § 1983 actions.[10] Finally, the

**8.** The only cause of action that derives from different facts is the claim under the first amendment. For this claim, however §§ 1331 and 1343 provide plaintiffs with an independent jurisdictional basis. The court finds that the state law claims asserted in cause of action number 7, see *supra* note 3 and the federal claims derive from a common nucleus of operative fact.

**9.** *Aldinger* first introduced the concept that congressional intent must be examined before a court concludes that it has the power to adjudicate a pendent state claim in situations in which asserting jurisdiction over the pendent claim would require the introduction of additional parties into the lawsuit. This case does not involve "pendent parties" because the pendent state claims involve the same parties as the federal claims. Although the Supreme Court applied this statutory intent analysis in the context of "pendent parties," the Court has indicated, and lower courts and commentators have reasoned, that there is no sound rationale for not applying this analysis to "pendent claim" as well as "pendent party" cases. *See Owen Equipment & Erection Co. v. Kroger,* 437 U.S. at 373, 98 S.Ct. at 2402 (in applying congressional intent analysis to diversity case in which plaintiff sought to amend complaint to sue impleaded, non-diverse, third-party defendant, Court uses broad language and speaks of "claims" rather than only "parties"); *Mongeon v. Shellcraft Industries,* 590 F.Supp. 956, 959 (D.Vt.1984) (after *Kroger,* test for pendent jurisdiction now includes congressional intent analysis); Matasar, *Rediscovering "One Constitutional Case": Procedural Rules and the Rejection of the* Gibbs *Test for Supplemental Jurisdiction,* 71 Calif.L.Rev. 1401, 1402 n. 4 (although Supreme Court has not explicitly applied statutory intent test to all exercises of supplemental jurisdiction, its opinions have been so read); Note, *A Closer Look at Pendent and Ancillary Jurisdiction: Toward A Theory of Incidental Jurisdiction,* 95 Harv.L.Rev. 1935, 1941 (1982) (incidental jurisdiction analysis is now three tiered).

**10.** In *Aldinger,* plaintiff alleged that her discharge from her job in a county treasurer's office violated her federal constitutional rights. She filed suit against the county treasurer and county commissioners under 42 U.S.C. § 1983. At that time, before *Monell v. Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), a municipal corporation was not deemed a "person" within the meaning of § 1983 and therefore plaintiff could not assert a § 1983 claim against the county. Accordingly, plaintiff sought to name the county as a defendant and to assert against the county claims under state statutes which provided for vicarious liability arising out of tortious conduct of county officials. After examining congressional intent, the Court held that plaintiff could not bring these state claims pendent to the § 1983 action.

*Aldinger,* however, was a "pendent party" case. The Court, in holding that it had no power to hear the case, distinguished a situation in which a party who had federal question jurisdiction over another party sought to join a related state claim against that same party, from a case in which exercising pendent jurisdiction would require bringing in an entirely new party to respond to the state claim. *Aldinger v. Howard,* 427 U.S. at 14–15, 96 S.Ct. at 2420. Thus, the Court's lack of jurisdiction in *Aldinger* derived not from the fact that the federal claim was brought under § 1983, but rather, because the state claims pendent to the § 1983 allegation involved another party. The Court reasoned:

[w]e decide here only the issue of so-called "pendent party" jurisdiction with respect to a

Supreme Court recently held that a federal court cannot exercise pendent jurisdiction if the adjudication of the state law claim would violate the eleventh amendment. *Pennhurst State School & Hospital v. Halderman,* 465 U.S. at 121, 104 S.Ct. at 919. ("neither pendent jurisdiction nor any other basis of jurisdiction may override the Eleventh Amendment."); see *supra* note 7.

■ In his motion for judgment on the pleadings, the State defendant argues that under the Supreme Court's holding in *Edelman v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974), the eleventh amendment prohibits the court from granting declaratory relief against the State. Perales' reliance on *Edelman* is misguided. In *Edelman,* the Supreme Court held that a suit by private parties in federal court, whether based on federal or state law, which seeks to impose a liability that must be paid from public funds in the state treasury is barred by the eleventh amendment. *Id.* at 677, 94 S.Ct. at 1362; *see Ex Parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908). If liability were imposed upon the State defendant, the award would be paid from the state treasury because the State Defendant is sued in his official capacity.[11] The eleventh amendment therefore limits recovery against the State defendant to prospective declaratory and injunctive relief. Only retroactive awards are barred by the eleventh amendment; declaratory or injunctive relief based on a federal claim is not. *Id; Edelman v. Jordan,* 415 U.S. at 677, 94 S.Ct. at 1362. Thus, although the eleventh amendment only prohibits this court from awarding monetary damages against the State, the plaintiffs' lack of standing bars the equitable relief sought. The State defendant is therefore absolved of all liability and his motion for judgment on the pleadings is granted. As to the City, however, although plaintiffs lack standing to obtain equitable relief, the court does not lack power to adjudicate the state and federal damage claims. *Edelman* would not preclude a damage recovery against the City because the funds would not come from the state treasury.

#### 2. Discretionary Factors

■ In *Gibbs,* the Supreme Court stated that a federal court need not exercise its power to adjudicate state claims whenever such power exists. Rather, pendent jurisdiction "is a doctrine of discretion, not of plaintiff's right." *United Mine Workers of America v. Gibbs,* 383 U.S. at 726, 86 S.Ct. at 1139. Accordingly, the *Gibbs* Court listed several situations in which a federal court should decline to exercise pendent jurisdiction. First, "[n]eedless decisions of state law should be avoided as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law." *Id.* Second, the dismissal of federal claims before trial should prompt the dismissal of state claims as well. *Id.* Third, where "it appears that the state issues substantially predominate, whether in terms of proof, of the scope of the issues raised, or of the comprehensiveness of the remedy sought, the state claims may be dismissed without

claim brought under §§ 1343(3) and 1983.... If the new party sought to be joined is not otherwise subject to federal jurisdiction, there is a more serious obstacle to the exercise of pendent jurisdiction than if parties already before the court are required to litigate a state-law claim.

*Id.* at 18, 96 S.Ct. at 2422. Thus, although the statutory analysis is to be applied to "pendent party" and "pendent claim" cases, see *supra* note 9, Congress has given federal courts the power to exercise jurisdiction over a § 1983 case involving a pendent claim only in cases in which no new parties need to be added to the suit to adjudicate the pendent claim. Because of this court's holding that the state and federal ques-

tions derive from a common nucleus of operative fact, the court's holding that it has the power to adjudicate the pendent state claims would be the same even if it did not adopt the congressional intent analysis for "pendent claim" cases.

11. Although this action names Perales in his official capacity as a defendant, it is in fact a suit against the state because the state is the real party in interest. *See Cory v. White,* 457 U.S. 85, 91, 102 S.Ct. 2325, 2329, 72 L.Ed.2d 694 (1982); *Ford Motor Co. v. Dep't of Treasury,* 323 U.S. 459, 464, 65 S.Ct. 347, 350, 89 L.Ed. 389 (1945). Accordingly, the eleventh amendment is implicated.

prejudice and left for resolution to state tribunals." *Id.* at 726–27, 86 S.Ct. at 1139.

■ Applying *Gibbs'* discretionary factors to the facts of this case, the court declines to exercise jurisdiction over the state law claims, specifically the state due process claim and the article XVII claim, see *supra* note 4. New York law is far from settled on the issue whether there is any state created right to shelter. See *infra* § III. A.[12] This issue however, will likely be decided imminently by the New York Appellate Division, First Department. *Id.* .

In sum, as a threshold matter, the plaintiffs lack standing to obtain declaratory or injunctive relief against either the City or the State. The eleventh amendment bars recovery of damages against the State and thus Perales' motion for judgment on the pleadings is granted. The court has the power to adjudicate the federal and state damage claims against the City but declines to exercise jurisdiction over the state law claims. The only remaining issue is whether the City is liable for damages under § 1983 for suspending shelter residents without prior notice or a hearing in violation of the fourteenth amendment's due process clause.

### III. ABSTENTION

■ Another issue not raised by the parties but which the court should consider is whether abstention is appropriate.[13] The Supreme Court has articulated three general categories under which a federal court should abstain from adjudicating federal claims. *See Calkins v. Blum*, 511 F.Supp. 1073, 1086–87 (N.D.N.Y.1981) (collecting cases), *aff'd*, 675 F.2d 44 (2d Cir.1982). First, a federal court may abstain to avoid decision of federal constitutional questions where the case can be disposed of on questions of state law. *Railroad Commission of Texas v. Pullman*, 312 U.S. 496, 501, 61 S.Ct. 643, 645, 85 L.Ed. 971 (1941) ("*Pullman*-type abstention"); *see Colorado River Conservation Dist. v. United States*, 424 U.S. 800, 814, 96 S.Ct. 1236, 1244, 47 L.Ed.2d 483 (1975) (abstention proper " 'in cases presenting a federal constitutional issue which might be mooted or presented in a different posture by a state court determination of pertinent state law.' ") (citations omitted). Second, abstention is proper to avoid needless conflict with the administration by a state of its own affairs. *Burford v. Sun Oil Co.*, 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1947) ("*Burford*-type abstention"); *see Colorado River Conservation Dist. v. United States*, 424 U.S. at 814, 96 S.Ct. at 1244 (abstention

---

**12.** Besides considerations of comity and the doctrine of constitutional avoidance, *Siler v. Louisville & Nashville Railroad Commission*, 213 U.S. 175, 193, 29 S.Ct. 451, 455, 53 L.Ed.2d 753 (1909); *see Ashwander v. Tennessee Valley Authority*, 297 U.S. 288, 346–47, 56 S.Ct. 466, 482–83, 80 L.Ed. 688 (1936) (Brandeis, J., concurring), which clearly dictate that this court decline the exercise of jurisdiction over these unsettled state law claims, see *infra* § III. A., exercising jurisdiction over these state law claims does "not necessarily foster the policies of 'judicial economy, convenience and fairness to the litigants,' *United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966), on which pendent jurisdiction is founded. For example, when a federal decision on state law is obtained, the federal court's construction often is uncertain and ephemeral." *Pennhurst State School & Hospital v. Halderman*, 465 U.S. at 122 n. 32, 104 S.Ct. at 920 n. 32. An erroneous interpretation of state law surely would not aid judicial economy or be fair to the litigants or the state. *Id.* The state court might later rule that this court's interpretation

of state law is incorrect. In such a case the federal court's ruling would not be dispositive. Here, assuming *arguendo* that the state finds that a right to shelter exists, it might decide that the homeless are entitled to greater due process under New York law than this court finds is required under the United States Constitution.

Moreover, judicial economy is significantly undercut in this case by this court's ruling that it lacks the power to grant prospective relief against the City and cannot award any relief against the State. *See Friedman v. Perales*, 616 F.Supp. 1363, 1368 (S.D.N.Y.1985). To gain the relief it seeks, plaintiffs would have to return to state court in any event. Should New York law become settled after the decision in *McCain v. Koch*, see *infra* § III A., the court will reconsider its decision to exercise pendent jurisdiction on the state law claims.

**13.** A court may decide *sua sponte* to abstain. *Bellotti v. Baird*, 428 U.S. 132, 143 n. 10, 96 S.Ct. 2857, 2864 n. 10, 49 L.Ed.2d 844 (1976); *Naylor v. McGrath*, 585 F.2d 557 (2d Cir.1978).

appropriate in cases presenting "difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case than at bar.") (citations omitted). Third, it is proper for a federal court to abstain to avoid duplicative litigation, thereby promoting sound judicial administration. *See Colorado River Water Conservation Dist. v. United States,* 424 U.S. at 815, 96 S.Ct. at 1245 ("*Colorado River* -type abstention").[14] The court finds that abstention would most likely be appropriate under all three doctrines. However, the court abstains from adjudicating the federal due process claim under *Pullman*. Accordingly, rather than dismiss the action, the court will "stay its hand" on the federal due process claim against the City until the New York Appellate Division, First Department, decides *McCain v. Koch,* which was argued on September 5, 1985.

### A. *Pullman* -Type Abstention

Generally, the *Pullman* doctrine teaches that a federal court ordinarily should refrain from adjudicating a case in which state action is challenged in a federal court as contrary to the federal Constitution if there are unsettled questions of state law that may be dispositive of the case and avoid the need for deciding the constitutional question. *Railroad Commission v. Pullman,* 312 U.S. at 500–01, 61 S.Ct. at 645; *McRedmond v. Wilson,* 533 F.2d 757, 760–61 (2d Cir.1976); *see* 17 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure § 4242, at 449 [hereinafter referred to as C. Wright]. In these situations, resolution by the state court of the unsettled question of state law which is raised in connection with a federal constitutional claim "leads to an authoritative answer rather than merely a forecast on the state questions, and depending on how the state questions are answered, may make it unnecessary to decide the federal constitutional issue." *Id.* § 4241, at 433 (citations omitted); *accord Jancyn Mfg. Corp. v. County of Suffolk,* 583 F.Supp. 1364, 1371 (E.D.N.Y.1984). If the federal courts construed state law in these situations, its construction would often be "uncertain and ephemeral." *Pennhurst State School & Hospital v. Halderman,* 465 U.S. at 122 n. 32, 104 S.Ct. at 920 n. 32. The *Pullman* doctrine is therefore principally based on considerations of federalism, and the desire

---

**14.** The mere fact that state law is difficult or uncertain is not in and of itself sufficient reason for federal courts to abstain. *Meredith v. City of Winter Haven,* 320 U.S. 228, 234–37, 64 S.Ct. 7, 10–12, 88 L.Ed. 9 (1943); *see Colorado River Water Conservation Dist. v. United States,* 424 U.S. at 816, 96 S.Ct. at 1245; *Smith v. Metropolitan Property and Liability Ins. Co.,* 629 F.2d 757, 761 (2d Cir.1980) (Mansfield, J., dissenting) (collecting cases). Before enunciating the *Colorado River* -type abstention doctrine the Supreme Court summarized three abstention "doctrines" that the court had recognized. These are: (1) avoiding the federal constitutional issue by seeking a state determination of state law ("*Pullman* -type"); (2) deferring to state resolution of difficult state law questions that involve important public policy or where federal review would be disruptive of state regulation or administration ("*Burford* -type"); and (3) declining to restrain state criminal proceedings, collection of state taxes and the like (*Younger* abstention). *Colorado River Water Conservation Dist. v. United States,* 424 U.S. at 814–16, 96 S.Ct. at 1244–45; *Giardina v. Fontana,* 733 F.2d 1047, 1052 n. 1 (2d Cir.1984). The third type of abstention is not relevant in this case and therefore will not be addressed.

Generally, abstention can only be justified in "exceptional circumstances where the order to the parties to repair to the State court would clearly serve an important countervailing interest." *Colorado River Water Conservation Dist. v. United States,* 424 U.S. at 813, 96 S.Ct. at 1244. Outside of these three categories, the district courts have "the virtually unflagging obligation ... to exercise the jurisdiction given them." *Colorado River Water Conservation Dist. v. United States,* 424 U.S. at 817, 96 S.Ct. at 1246. The Supreme Court has differentiated the *Colorado River* doctrine from the three abstention doctrines by stating that "considerations of '[w]ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation,'" *id.* at 817, 96 S.Ct. at 1246, permit a district court to dismiss a case in favor of concurrent state proceedings only upon "the clearest of justifications," *id.* at 819, 96 S.Ct. at 1247; *see id* at 817–18, 96 S.Ct. at 1246. ("The circumstances for permitting dismissal of a federal suit due to the presence of a concurrent state proceeding for reasons of wise judicial administration are considerably more limited than the circumstances appropriate for abstention."); *Moses H. Cone Memorial Hospital v. Mercury Construction,* 460 U.S. 1, 15, 103 S.Ct. 927, 936, 74 L.Ed.2d 765 (1983) (same).

to preserve harmonious federal-state relations. C. Wright, *supra*, § 4242, at 465; *see McRedmond v. Wilson*, 533 F.2d at 761 (policies of *Pullman* doctrine are "the avoidance of federal-state friction, the recognition that regardless of a federal court's construction, the state's highest court is the final expositor of that state's law, and the possibility that the federal question may be avoided.").[15]

 In this circuit, the three conditions for invoking the *Pullman* doctrine are "that the state law be unclear or the issue of state law be uncertain, that resolution of the federal issue depend upon the interpretation to be given to the state law, and that the state law be susceptible of an interpretation that would avoid or modify the constitutional issue." *McRedmond v. Wilson*, 533 F.2d at 761 (citations omitted); *see West v. Village of Morrisville*, 728 F.2d at 133–34; *Winters v. Lavine*, 574 F.2d 46, 69 (2d Cir.1978). In this case, plaintiffs' motion for partial summary judgment argues that defendants' eviction of plaintiffs from municipal shelters violated plaintiffs' due process rights secured by the fourteenth amendment of the United States Constitution. In order for the court to grant plaintiffs' requested relief, it would first have to determine that plaintiffs had a protected property interest in shelter and then analyze whether, given this property interest, the shelter system's suspension procedures were adequate under the fourteenth amendment. A property interest in shelter would exist if there was a mutually explicit understanding created by New York State or City policy that shelter would be provided. *See Perry v. Sindermann*, 408 U.S. 593, 601, 92 S.Ct. 2694, 2699, 33 L.Ed.2d 570 (1972). If there was such an understanding, then government supported benefits would constitute an "entitlement"—enforceable rights—for persons qualified to receive them and there-

fore be subject to procedural due process protection. *See, e.g., Perry v. Sindermann*, 408 U.S. at 601–03, 92 S.Ct. at 2699–2700 (teacher had a protected property interest in continued employment where college had a *de facto* tenure policy, arising from rules and understandings officially promulgated and fostered); *Bell v. Burson*, 402 U.S. 535, 542–43, 91 S.Ct. 1586, 1591, 29 L.Ed.2d 90 (1971) (drivers license is a protected property interest); *Goldberg v. Kelly*, 397 U.S. 254, 261–62, 90 S.Ct. 1011, 1016–17, 25 L.Ed.2d 287 (1970) (welfare benefits are entitlements for persons qualified to receive them and procedural due process protection is applied to their termination); *Lopez v. Henry Phipps Plaza South*, 498 F.2d 937, 943 (2d Cir.1974) (government subsidies for housing, coupled with a custom of renewal, gives rise to a protected property interest). *See also Hart v. Perales*, N.Y.L.J., Apr. 10, 1986, at 11 col. 1 (Sup.Ct.N.Y.Co.) (under *Goldberg v. Kelly*, shelter resident is entitled to timely notice and a proper hearing to determine whether his public assistance benefits should be terminated).

In considering the three *Pullman* factors, the first prong is satisfied because the state issue whether the homeless have a right to shelter is extremely unclear. *Canaday v. Koch*, 608 F.Supp. 1460, 1466–67 (S.D.N.Y.), *aff'd*, 768 F.2d 501 (2d Cir. 1985); *Canaday v. Koch*, 598 F.Supp. 1139, 1150 (E.D.N.Y.1984); *Lamboy v. Gross*, 129 Misc.2d 564, 493 N.Y.S.2d 709, 712–13 (N.Y.Sup.Ct.1985). Whether the New York Constitution or other provisions of state law bind the City and State to provide shelter for the homeless has been addressed in four cases. These cases are ambiguous and without much precedential value. *Canaday v. Koch*, 608 F.Supp. at 1466–67.

---

15. *Pullman*-type abstention was first used in an equitable action. *Railroad Comm'n v. Pullman*, 312 U.S. at 500, 61 S.Ct. at 645. However, it may also be ordered in actions for damages if a federal constitutional question is raised when the case could also be decided on state grounds, *Clay v. Sun Ins. Office Ltd.*, 363 U.S. 207, 80 S.Ct. 1222, 4 L.Ed.2d 1170 (1960), and is particularly appropriate in § 1983 actions seeking damages, *see Boehning v. Indiana State Employers Association*, 423 U.S. 6, 96 S.Ct. 168, 46 L.Ed.2d 148 (1960); *Harrison v. NAACP*, 360 U.S. 167, 79 S.Ct. 1025, 3 L.Ed.2d 1152 (1959); *West v. Village of Morrisville*, 728 F.2d 130, 135 (2d Cir. 1984).

In *Callahan v. Carey*, N.Y.L.J., Dec. 11, 1979, at 10, col. 5 (Sup.Ct.N.Y.Co.), the court granted plaintiffs' request for a temporary mandatory injunction directing state and local government officials to provide 750 beds for homeless men.[16] The plaintiffs relied on various state law provisions in support of their motion. The *Callahan* case was eventually resolved by a consent judgment by which City and State officials agreed, without admitting liability or obligation, to provide housing to homeless men.[17] *Callahan v. Carey*, Index No. 42582/79 (N.Y.Sup.Ct.). The decree explicitly negated a finding of liability. *Id.* Two district courts have commented on *Callahan's* limited value as persuasive authority. Judge Leisure noted that the injunction was issued on the eve of winter's onset, and "clearly was motivated by the court's emphasized concern regarding the likelihood of a large number of deaths from hypothermia." *Canaday v. Koch*, 608 F.Supp. at 1467. Further, Judge Glasser correctly stated that under New York Law, grant of a preliminary injunction "is not a determination on the merits and does not invoke the doctrines of res judicata or law of the case." *Canaday v. Koch*, 598 F.Supp. at 1151.

The most puzzling of the cases discussing the homeless' right to shelter *vel non* was *McCain v. Koch*, 127 Misc.2d 23, 484 N.Y.S.2d 985 (N.Y.Sup.Ct.1984). That case was commenced in Supreme Court, New York County on March 31, 1983, by order to show cause. Plaintiffs sought class certification and a preliminary injunction ordering a complete overhaul of the City's system for providing emergency shelter to homeless families. Plaintiffs sought to compel the New York City defendants to provide plaintiffs with safe and adequate emergency housing and assistance suitable for families with dependent children and to compel defendants to adopt detailed regulations to assist plaintiffs and other families

similarly situated. Plaintiffs also sought to compel the New York State Department of Social Services to provide them with immediate fair hearings to review the denial of emergency shelter. More specifically, as part of the requested provisional relief, they sought an order locating and making available additional emergency housing units within New York City so that all families with children in need of emergency housing could immediately obtain such housing in New York City. They also challenged the procedures for informing homeless families of services available to them and the methods for determining eligibility of homeless families for certain public assistance benefits. Moreover, there were a host of other claims of substantive and procedural defaults by the City and State in providing emergency housing and other public assistance benefits to homeless families.

Defendants argued that the City's and State's legal duty only required them to provide cash grants to the homeless. Plaintiffs asserted that by including "securing family shelter" among the services to be provided, the state's aid plan explicitly required provision by the City and State of emergency shelter to the homeless.

On June 22, 1984, Justice Greenfield issued his ruling on the motions. Justice Greenfield began by expressing unhappiness with defendants' position that state law imposed upon them no obligation beyond provision of cash grants. He stated: "Defendants argue that they have no obligation to provide emergency housing for the homeless. This from the city whose Statue of Liberty welcomed immigrants to these shores, and proudly proclaimed: 'Send these, the homeless, tempest-tossed to me.'" *Id.*, 484 N.Y.S.2d at 987. Two sentences later, however, he appeared persuaded by defendants' argument. He reasoned:

---

**16.** *Callahan* was a suit brought on behalf of "all destitute homeless derelicts roaming the neighborhood of the Bowery."

**17.** Subsequently, the terms and obligations of the *Callahan* decree were held under the four-

teenth amendment's equal protection clause to apply to homeless women as well. *Eldredge v. Koch*, 118 Misc.2d 163, 459 N.Y.S.2d 960, 961 (N.Y.Sup.Ct.), *rev'd on other grounds*, 98 A.D.2d 675, 469 N.Y.S.2d 744, 745 (1st Dept.1983).

Article XVII of the New York State Constitution provides for aid to the needy and that they shall be provided for by the State or by its subdivisions. This obligation is mandatory and imposes upon the State an affirmative duty to aid the needy (*Tucker v. Toia*, 43 N.Y.2d 1 at 8, 400 N.Y.S.2d 728, 371 N.E.2d 449). Neither the Constitution nor the Social Services Law ... 131, 131–a, 350 provide that emergency shelter shall be given to the needy in explicit terms.

*McCain v. Koch*, 484 N.Y.S.2d at 987. Justice Greenfield then granted plaintiffs' preliminary injuction only to the extent of his interim order, dated June 20, 1983. By that order, the court ordered that families with children in need of emergency housing or assistance be provided with notice of their rights to emergency housing and the right to an expedited or regular fair hearing in which plaintiffs may contest the agency's determination. It further provided that families granted emergency housing be placed in clean facilities which meet New York City fire, health, safety and residential regulation requirements and located in light of the children's educational needs. Finally the order provided that families shall continue to be provided with emergency housing and assistance until such time as they shall have an opportunity to contest denial of emergency housing and assistance.

In converting the interim order into a final order, Justice Greenfield stated: "The procedural rights of the homeless families must also be assured.... This court therefore directed Defendants to implement a system to expedite review of determination by the agencies and to resolve problems encountered by the plaintiffs in obtaining public assistance and to maintain aid pending resolution." The bulk of plaintiffs' requested relief, however, was denied. Justice Greenfield's opinion is therefore ambiguous regarding whether defendants have a substantive duty to provide emergency shelter to the homeless. He "appears to have decided either that plain-

tiffs' right to shelter argument lacked merit, or at most, that if defendants are under any obligation at all under state law actually to provide shelter, that duty is not *explicitly* spelled out, but must somehow be inferred." *Canaday v. Koch*, 608 F.Supp. at 1464; *accord Lamboy v. Gross*, 493 N.Y.S.2d at 712–13.

Both sides were unhappy with the decision and appealed to the First Department. Argument took place September 5, 1985. Plaintiffs challenged, among other things, the partial denial of the preliminary injunction. Defendants challenged the rulings directing compliance with certain minimum standards in any housing that was provided and ordering that the procedural safeguards be followed.

The other two cases which addressed the issue whether a right to shelter existed were federal courts. In *Koster v. Webb*, 598 F.Supp. 1134 (E.D.N.Y.1983), plaintiffs brought an action under § 1983 and other federal and state laws, challenging defendant's failure to provide them with emergency shelters. The relief sought—creation of additional emergency shelter capacity— was identical to some of the relief sought in *McCain*.[18] Judge Glasser held that homeless indigent mothers had sufficiently stated a claim for relief to withstand a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss. In a later case, however, *Canaday v. Koch*, 598 F.Supp. 1139 (E.D.N.Y.1984), in which Judge Glasser transferred the case to the Southern District for improper venue, Judge Glasser stated in dictum that had venue been proper, he would have abstained. He noted that "[t]his Court's construction of the New York statutes [in *Koster*] does not alter the fact that the issue is as yet undecided by New York courts." *Id.* at 1151.

Finally, *Canaday*, was transferred to the Southern District and assigned to Judge Leisure. In a comprehensive opinion, Judge Leisure held that *Burford*-type abstention and *Colorado River*-type absten-

---

**18.** The *McCain* complaint was far broader in scope. *See Canaday v. Koch*, 608 F.Supp. at 1464.

tion were appropriate and that *Pullman*-type abstention was inappropriate. After analyzing Justice Greenfield's opinion in *McCain*, Judge Leisure was troubled by the ambiguity regarding whether Justice Greenfield was interpreting New York law to provide a right to shelter. *Canaday v. Koch*, 608 F.Supp. at 1464; *accord Lamboy v. Gross*, 493 N.Y.S.2d at 712 ("it is not clear that Justice Greenfield found a substantive duty to provide emergency shelter.") He concluded that the state law issues were "far from clear" and that it is "quite obvious that the meaning of the pertinent provisions of New York law is unsettled." *Canaday v. Koch*, 608 F.Supp. at 1467. The first *Pullman* prong is therefore satisfied. The existence of a right to shelter under New York law is extremely unclear.[19]

The second prong of the *Pullman* doctrine is also satisfied. That is, resolution of the federal issue depends upon the interpretation to be given to the state law. If any of the various provisions of the New York Constitution or state statutes have created a mutually explicit understanding that shelter would be provided thereby amounting to an entitlement, this state created entitlement would be a protectable property interest subject to federal due process scrutiny.[20] Although plaintiffs plead their claim as a violation of the federal due process clause, their due process claim derives from various provisions of state statutes and the New York Constitution. Any federal due process protection would be logically dependent on resolution of the state law issue of whether a state created right exists in the first place. *See Leis v. Flynt*, 439 U.S. 438, 441, 99 S.Ct. 698, 700, 58 L.Ed.2d 717 (per curiam) ("As this Court has observed on numerous occasions, the Constitution does not create property interests. Rather, it extends various procedural safeguards to certain interests 'that stem from an independent source such as state law.'") (citations omitted); *Board of Regents v. Roth*, 408 U.S. at 577, 92 S.Ct. at 2709; (Property interests "are

---

**19.** Plaintiffs contend that the consent judgment in *Callahan*, along with the statement by Wilbur A. Hicks, Jr., sworn to on December 17, 1984, see Hicks Affidavit ("our eighteen shelters accept all persons who come to us and state they have nowhere else to stay") establishes a right to shelter. They further allege that this "stated public policy" along with the Consent Judgment arise out of a mandate of the New York State Constitution that the needy be provided for.

It is true that the State and City policy of assistance to the needy is not a matter of legislative grace. It is specifically mandated by the New York Constitution. *Tucker v. Toia*, 400 N.Y.S.2d 728, 730–31, 371 N.E.2d 449 (N.Y.Ct. App.1977); *Jones v. Berman*, 37 N.Y.2d 42, 54–55, 371 N.Y.S.2d 422, 332 N.E.2d 303 (1975). The New York State Constitution, article XVII, § 1 provides: "[T]he aid, care and support of the needy are public concerns and shall be provided by the state and by such of its subdivisions, and in such manner as the legislature may from time to time determine." The Legislature has provided:

[E]ach public welfare district shall be responsible for the assistance and care of any person who resides or is found in its territory and who is in need of public assistance and care which he is unable to provide for himself. Social Services Law ¶ 62 subd. 1.

The drafters of the constitutional provision explicitly stated that the purpose of the amendment was to "recognize the responsibility of the state for the aid, care and support of persons in need." Revised Record of the Constitutional Convention of the State of New York, Vol. II, p. 1084, (1938). In *Tucker v. Toia*, 400 N.Y.S.2d at 730–32, 371 N.E.2d 449, the New York State Court of Appeals interpreted these words as setting forth a definite government policy, and a concrete social obligation that no court may ever misread. In view of the legislative history, as well as the mandatory language of the statute, the amendment imposes upon the State and City an affirmative duty to aid the needy. *Id.* at 730–31, 371 N.E.2d 449. This cannot be ignored in either its letter or spirit. *Id.; Jones v. Berman*, 37 N.Y.2d at 54–55, 371 N.Y.S.2d 422, 332 N.E.2d 303.

Although Article XVII, § 1 has been interpreted as imposing upon the state the obligation to provide for the needy, however, as discussed, no court has yet interpreted this provision as establishing a right to shelter.

**20.** The Supreme Court has allowed the states to define the scope of government benefits to which any individual is entitled. J. Nowak, R. Rotunda & J. Young, *Constitutional Law* at 491 (1978). Individuals derive claims of entitlement from existing rules or understandings that stem from an independent source such as state law rules, or understandings that secure certain benefits and that support claims of entitlement to those benefits. *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1971).

created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits."). *Compare Canaday v. Koch*, 608 F.Supp. at 1467 ("Whether plaintiffs were denied equal protection of the laws is a question that may be decided independently of any decision as to plaintiffs' rights under state law"); *McRedmond v. Wilson*, 533 F.2d at 762 (resolution of federal constitutional issue of whether there was a state created right did not turn upon construction of any unclear state statute where state court had twice interpreted state statute as entitling plaintiff as a matter of "due process" to that right). The state law issues are logically preliminary to the federal constitutional issue.

Finally, the third *Pullman* requirement, that state law be susceptible of an interpretation that would avoid or modify the federal constitutional issue is satisfied. If the New York courts determine that there is no right to shelter under New York law, then the federal Constitution would not be implicated. If the State has not created the right, then no process is due.

Aside from satisfying the criteria in this circuit for abstaining under *Pullman*, certain unique conditions are present here which make abstention more compelling then in the usual *Pullman* context. In this case, the court need not send the parties to state court, because the unsettled issue upon which this court relies for abstaining should be decided shortly.[21] This is an important factor which often will tip the scales in favor of abstention. 17 C. Wright, *supra*, § 4242, at 470; *see Harris County Commr's. Court v. Moore*, 420 U.S. 77, 83, 95 S.Ct. 870, 874, 43 L.Ed.2d 32 (1975) ("Where there is an action pending in state court that will likely resolve the state-law questions underlying the federal

claim, we have regularly ordered abstention."); *Reid v. Board of Education*, 453 F.2d 238, 243 n. 9 (2d Cir.1971) ("Although the abstention doctrine does not depend upon the pendency of a state court action, there is greater reason to abstain when a state court decision may be imminent"); *accord Winters v. Lavine*, 574 F.2d 46, 72 (2d Cir.1978); *Bryant v. Commissioner of Social Services*, 530 F.Supp. 1175 (S.D.N. Y.1982).

Similarly, *Pullman*-type abstention often has the adverse effect of creating piecemeal litigation, causing delay and forcing the plaintiff into a forum that he did not choose. *Baggett v. Bullitt*, 377 U.S. 360, 378–79, 84 S.Ct. 1316, 1326, 12 L.Ed.2d 377 (1964) ("abstention operates to require piecemeal adjudication in many courts, thereby delaying ultimate adjudication on the merits for an undue length of time," citations omitted); *see Pennhurst State School & Hospital v. Halderman*, 465 U.S. at 122 n. 32, 104 S.Ct. at 920 n. 32. In this case, however, these parties need not return to state court due to the pending suit in *McCain*. Further, even if the parties were forced to bring this suit in state court, piecemeal litigation would be necessary if the plaintiffs wanted to obtain equitable relief from the City or any relief from the State. See *supra* § II. Moreover, this court can think of no greater intrusion into state matters and no greater violation of the doctrine of constitutional avoidance, *see Siler v. Louisville & Nashville Railroad Commission*, 213 U.S. at 193, 29 S.Ct. at 455, than deciding a case involving a major state law issue which will be decided imminently by an appellate state court. Whether or not it is true that "[t]his court has adopted a broad view of abstention," *compare Smith v. Metropolitan Property & Liability Ins.*, 629 F.2d 757, 760 (2d Cir.1980) *with id.* at 761

**21.** *McCain* was argued September 5, 1985. The issue whether the homeless have a right to shelter is squarely before the court and is vigorously contested. *Compare McCain v. Koch*, Plaintiff's Brief as Respondents, Appellants and Cross-Appellants at 36–46, 100–09 *and* Brief of Proposed

Plaintiff-Intervenors-Appellants at 28–32 *and* Reply Brief of Proposed Plaintiff-Intervenors-Appellants at 4, 9–12 *with* Municipal Appellant's Brief at 30–31, 35–37, 47–52 *and* Municipal Appellant's Reply Brief and Municipal Cross-Respondents' Brief at 2–5.

(Mansfield, J., dissenting), abstention in this case is clearly appropriate.

When *Pullman*-type abstention is invoked, the federal court should not dismiss the case, but rather it should exercise its wise discretion "by staying its hands." *Railroad Commission v. Pullman*, 312 U.S. at 501–02, 61 S.Ct. at 645–46. Accordingly, the court will put this case on the suspense docket until the First Department renders its decision in *McCain*. Once *McCain* is decided, this court will either adjudicate the federal due process claim or dismiss this claim under *Burford*-type abstention.

### B. *Burford*-Type Abstention

Generally, *Burford*-type abstention is ordered to avoid needless conflict with the state's administration of its own affairs. 17 C. Wright, *supra*, § 4244, at 482. While *Pullman's* emphasis was on constitutional avoidance, *Burford's* is chiefly concerned with comity between the federal and state sovereignties. *Canaday v. Koch*, 608 F.Supp. at 1468 ("In a nutshell, this brand of abstention permits federal courts to exercise their discretion to refrain from interfering with state policymaking and enforcement efforts in complex areas which are primarily of state concern and prerogative."). The Supreme Court has stated:

> [*Burford*] [a]bstention is ... appropriate where there have been presented difficult questions of state law bearing on problems of substantial public import whose importance transcends the result in the case then at bar. *Louisiana Power & Light v. City of Thibodaux*, 360 U.S. 25 [79 S.Ct. 1070, 3 L.Ed.2d 1058] (1959).... See also *Kaiser Steel Corp. v. W.S. Ranch*, 391 U.S. 593 [88 S.Ct. 1753, 20 L.Ed.2d 835] (1968); *Hawks v. Hamill*, 288 U.S. 52 [53 S.Ct. 240, 77 L.Ed. 610] (1933). In some cases, however, the state question itself need not be determinative of state policy. It is enough that exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern.... *Burford v. Sun Oil*, 319

U.S. 315 [63 S.Ct. 1098, 87 L.Ed. 1424] (1943).

*Colorado River River Water Conservation Dist. v. United States*, 424 U.S. at 814, 96 S.Ct. at 1244; *see Smith v. Metropolitan Property & Liability Ins.*, 629 F.2d at 760 (unclear state law and broad impact on state policy listed as factors that second circuit considers).

In *Canaday*, the court did an exhaustive analysis of the *Burford* doctrine and concluded that *Burford* abstention was appropriate. 608 F.Supp. at 1468–72. Judge Leisure concluded:

> It is abundantly clear to me that the issues presented in this case should be decided by state decisionmakers. The problem of New York City's homeless is one of predominantly local concern. State law regarding governmental obligations to the destitute homeless is unsettled and unclear. Local officials are still endeavoring to formulate and effect a coherent policy for providing shelter for the homeless. Obviously, federal court intervention in this area would interfere with those efforts. Allocation of resources for welfare programs is a task uniquely within the sphere of local control. Placing that task under the supervision of this Court is frought with dangers. This Court has no particular expertise in structuring welfare programs, or allocating scarce resources among competing needs. Nor is it on familiar terms with the state and local political and procedural apparatus which could come under its receivership were it to proceed with deciding this case. Nor does it have the familiarity with state law that is indispensible to adequate decision of this wrenching problem. For the federal court to thrust itself into this area and dictate to state and local officials its view of the proper way to discharge their official duties can hardly be conducive to harmonious federalism.

*Canaday v. Koch*, 608 F.Supp. at 1470 (footnotes omitted).

Should the First Department decide that there is a state created right to shelter, this

court would be faced with many, but not all of the issues, faced by Judge Leisure when it determines what process is due. Although the court is not dismissing the case under *Burford,* it notes the following factors that would favor *Burford*-type dismissal. First, the shelters' suspension procedures are a sensitive issue of local concern. The state courts are better equipped to evaluate the procedures that would operate most effectively in its shelters. In order to determine what process would be due shelter residents, the court would have to consider three factors: (1) the private interest that will be affected by the official action, (2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional procedural safeguards; and (3) the government's interest, including the function involved and the fiscal and administrative burdens that the additional procedural requirements would entail. *Mathews v. Eldridge,* 424 U.S. 319, 334, 96 S.Ct. 893, 902, 47 L.Ed.2d 18 (1976). Although this court and the state court would be equally equipped to address the first two factors, the state court is in a better position to address the third factor. For example, an important factor in assessing the government interest is which procedures would best maintain the shelter worker's authority and create the least possible disturbance in the shelter after a violent incident occurs in plain view, such as an assault. Clearly, the state is more familiar with the operation of the shelter system and which procedures would best satisfy these needs.

Second, in light of this court's ruling that the plaintiffs did not have standing to obtain equitable relief, this court would not have the power to order that certain procedures be applied to conform with federal due process. Thus it is likely that a holding that plaintiffs are entitled to money damages because of inadequate procedures without a binding order as to which procedures must be followed would result in a decision which bore on problems whose importance "transcended the result in the case at bar" but one in which the court was powerless to correct.

A third related factor that might later compel dismissal is that because plaintiffs cannot recover from the State in federal court and because the court is powerless to grant equitable relief, the plaintiffs would have to return to state court anyway to obtain the relief they sought.

Finally, local officials are still endeavoring to formulate effective procedures which will be used in its shelters. In fact, during the pendency of this suit, new procedures were promulgated. Federal court intervention would interfere with those efforts. Thus, although this court will "stay its hands" under *Pullman,* abstention under *Burford* might also be warranted.

C. *Colorado River*-type abstention

In *Colorado River Water Conservation Dist. v. United States,* 424 U.S. at 817, 96 S.Ct. at 1246, the Supreme Court stated:

Although this case falls within none of the abstention categories, there are principles unrelated to considerations of proper constitutional adjudication and regard for federal-state relations which govern in situations involving the contemporaneous exercise of concurrent jurisdictions, either by federal courts or by state and federal courts. These principles rest on considerations of "[w]ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation."

(citations omitted).

Thus in the interests of "wise judicial administration," a federal court may decline to adjudicate a case over which it has jurisdiction because of a parallel litigation which is pending in state court. The Court cautioned that "the circumstances permitting the dismissal of a federal suit due to the presence of a concurrent state proceeding for reasons of wise judicial administration are considerably more limited than the circumstances appropriate for abstention. The former circumstances, though exceptional, do nevertheless exist." *Id.* at 818, 96 S.Ct. at 1246; *Andrea Theatres v. Theatre Confections,* 787 F.2d 59, 62 (2d Cir. 1986). In determining whether or not ex-

ceptional circumstances are present, the Court in *Moses H. Cone Memorial Hospital v. Mercury Construction,* 460 U.S. at 19–26, 103 S.Ct. at 938–42, identified six factors to be considered. These factors are: (1) assumption of either court of jurisdiction over a res or property, (2) convenience to the parties of one forum over the other, (3) avoidance of piecemeal litigation, (4) the order in which jurisdiction was obtained by the concurrent forums, (5) the progress of the litigations and (6) whether federal or state law provides the rule of decision on the merits. *See Giardina v. Fontana,* 733 F.2d 1047, 1053 (2d Cir.1984). No one factor is determinative, *Colorado River Water Conservation Dist. v. United States,* 424 U.S. at 818, 96 S.Ct. at 1246, and the weight accorded to each factor varies from case to case, *Moses H. Cone Memorial Hospital v. Mercury Construction,* 460 U.S. at 16, 103 S.Ct. at 937. Dismissal will be warranted only upon "the clearest of justifications." Colorado River Water Conservation Dist. v. United States, *424 U.S. at 818–19, 96 S.Ct. at 1246–47.*

In this case, the *McCain v. Koch* litigation is not parallel in the sense that the parties are the same or that all of the issues are identical. *See Crawley v. Hamilton County Commissioners,* 744 F.2d 28, 31 (6th Cir.1984); *American Mfg'rs Mut. Ins. Co.,* 743 F.2d 1519, 1523 (11th Cir. 1984). However, it is parallel in the sense that the crucial threshold issue—whether New York has created a property interest in shelter for the homeless—will be decided imminently. Rather than apply a rigid rule that the entire lawsuits must be identical, the court finds that the "parallel" requirement is satisfied when the main issue in the case is the subject of pending litigation. *Cf. Winters v. Lavine,* 574 F.2d at 69 (It is "well understood that a federal court presented with such [federal constitutional] claims will under certain circumstances have a duty to postpone consideration of the federal constitutional claims until the state courts have had an opportunity to consider other *issues* inherent in the lawsuit") (emphasis added). *Compare Canaday v. Koch,* 608 F.Supp. at 1464 (court

properly abstained where many issues were pending in state court, one of which was the main issue in the federal court suit.); *Colorado River's* and *Moses H. Cone's* overriding concern was with sound judicial administration and avoidance of duplicative litigation, whether of cases or issues, and thus an inquiry into the *Cone* factors should be determinative regarding the appropriateness of *Colorado River* abstention.

After evaluating the factors, the court concludes that in addition to *Pullman* -type abstention and *Burford* -type abstention, this court could most likely also abstain under *Colorado River.* Factors 3 through 6 weigh in favor of abstaining under *Colorado River.*[22] The danger of piecemeal litigation—factor 3—was "paramount in *Colorado River." Moses H. Cone Memorial Hospital v. Mercury Construction,* 460 U.S. at 19, 103 S.Ct. at 938. A stay of this action certainly will not result in piecemeal litigation. The parties need not return to state court, but rather must simply await the *McCain* decision. Factors 4 and 5 weigh most heavily in favor of abstention. The state court action was commenced first. Furthermore, the state court received briefs of hundreds of pages regarding the crucial threshold issue in this case and heard argument over seven months ago. Finally, source of law dictates that abstention is appropriate. Although the presence of federal issues counsels against declining jurisdiction, *id.* at 25–26, 103 S.Ct. at 941–42, the presence of federal questions are not dispositive, *Canaday v. Koch,* 608 F.Supp. at 1474. As in *Canaday,* "the primary battleground is state law, and unsettled state law at that. Clarification of that state law may obviate the need for decision of a constitutional issue." *Id.* Whether New York has created an entitlement in shelter is a state law issue. Thus, a stay under *Colorado River* would be appropriate in order to avoid duplicative litigation of the issue whether shelter residents have a right to shelter under New York law.

---

**22.** Factors 1 and 2 weigh neither in favor of nor against abstention.

This court is neither blind nor insensitive to the serious plight of the homeless. However, although their problems are "serious, stubborn, and frustrating, [this court does] not believe that federal courts are more adequately suited to address them than the state courts," *Canaday v. Koch*, 768 F.2d at 503, especially not in the first instance. This is an "exceptional case" where the theories of constitutional avoidance, comity, and judicial economy all tip the scales in favor of this court abstaining. The court will stay the action under the *Pullman* doctrine and reserves decision on whether to dismiss the case under *Burford* -type abstention until *McCain* is decided. The court notes that *Colorado River* also justifies abstaining in the case.

## CONCLUSION

State defendant Perales' motion for judgment on the pleadings is granted. The court will not provide injunctive or declaratory relief against any defendant because plaintiffs lack standing to obtain equitable relief. Furthermore, the eleventh amendment bars the damage claims against the State defendant from adjudication in federal court. The court declines, at this time, to exercise pendent jurisdiction over plaintiffs' state law claims against the City. Further, the court abstains from consideration of plaintiffs' federal due process claim for damages against the City until the decision in *McCain v. Koch* is rendered. The case is hereby put on suspense until then.

SO ORDERED.