**BULL & BEAR GROUP, INC., Plaintiff,**

v.

**James W. FULLER, Defendant.**

**James W. FULLER, Counterclaim
Plaintiff,**

v.

**Bassett S. WINMILL, Counterclaim
Defendant.**

**No. 91 Civ. 4802 (PKL).**

United States District Court,
S.D. New York.

March 17, 1992.

Lansing R. Palmer, New York City (Lansing R. Palmer, Susan A. Bartlett, of counsel), for plaintiff and counterclaim defendant.

Wolf Haldenstein Adler Freeman & Herz, New York City (Daniel W. Krasner, Eric B. Levine, of counsel), for defendant and counterclaim plaintiff.

## OPINION AND ORDER

LEISURE, District Judge,

In this action, plaintiff, Bull & Bear Group, Inc. and counterclaim defendant Bassett S. Winmill (collectively "Bull & Bear"), now move the Court, pursuant to Fed.R.Civ.P. 56, for summary judgment or, in the alternative, for an order, pursuant to *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976), abstaining from the exercise of jurisdiction and remanding this action to the Supreme Court of the State of New York, New York County. Defendant/counterclaim plaintiff James W. Fuller ("Fuller") opposes this motion, and cross-moves for summary judgment. For the following reasons, the Court declines to exercise its jurisdiction over this action, and remands the case to New York Supreme Court.

## BACKGROUND

This diversity action was initiated in the New York Supreme Court by Verified Complaint dated July 10, 1991, and was removed to this Court on July 16, 1991. The action, which is related to a series of cases currently pending in state court between these same parties, arises out of a dispute concerning a promissory note, dated December 16, 1986 (the "Note"), which Fuller executed in favor of Bull & Bear while employed as president, chief operating officer and director of the firm.

The opening salvo in this series of actions was fired in November 1988, when Bull & Bear commenced an action on the Note in the New York Supreme Court ("the 1988 Action"). Although the parties' cross-motions for summary judgment in the 1988 Action were denied by the Supreme Court by Order dated May 12, 1989 (Myriam J. Altman, J.), the Appellate Division, by Memorandum Decision dated February 14, 1991, vacated the denial and granted sum-

mary judgment on the Note in favor of Bull & Bear. *See Bull & Bear Group, Inc. v. Fuller,* 170 A.D.2d 275, 565 N.Y.S.2d 807, 808 (1st Dept.), *appeal dismissed,* 78 N.Y.2d 1110, 578 N.Y.S.2d 873, 586 N.E.2d 56 (1991). Although Fuller has sought to prevent enforcement of the judgment in the 1988 Action, it appears that all routes of appeal have been exhausted, and that Bull & Bear's judgment of approximately $700,000 will soon be satisfied. *See* Memorandum of Law of Plaintiff Bull & Bear Group, Inc. and Counterclaim Defendant Bassett S. Winmill in Support of Motion for Summary Judgment or Remand ("Plaintiff's Motion"), at 21; Reply Memorandum of Law of Plaintiff Bull & Bear Group, Inc. and Counterclaim Defendant Bassett S. Winmill in Support of Motion for Summary Judgment or Remand, at 12–13.

After entry of judgment in favor of plaintiff in the 1988 Action, Fuller commenced a suit against Bull & Bear and Winmill in New York Supreme Court on May 29, 1991 ("May 1991 Action"). According to Fuller, the May 1991 Action contained "substantive claims that Fuller had raised in the [1988] Action which, he contended, had not been litigated on the merits." Defendant's Memorandum of Law in Opposition to Plaintiff's and Counterclaim Defendant's Motion for Summary Judgment or Remand, and in Support of Defendant's Motion for Summary Judgment ("Defendant's Response"), at 4.[1]

Bull & Bear then commenced the instant action in state court, seeking reimbursement of collection costs associated with the Note. After removing the case to this Court, Fuller filed an answer, on August 13, 1991, which included counterclaims identical to the claims asserted in the May 1991 Action and the defenses raised in the 1988 Action. *See* Defendant's Response, at 5 ("Fuller restated his claims in the [May 1991] Action as counterclaims in this action.").[2]

Despite the tortured procedural history of this action, the issues currently before the Court are relatively narrow. Paragraph 4 of the Note provides that:

> The maker agrees to promptly reimburse the Payee for expenses of every kind, including, without limitation, attorneys' fees, incurred by the Payee in connection with the collection or enforcement of any or all obligations under this note.

*See* Affidavit of Lansing R. Palmer, Esq., sworn to on September 20, 1991, Exh. C. Believing this Note term to be an indemnification provision, for which a cause of action does not accrue until after payment of costs, Bull & Bear did not include the reimbursement claim in the 1988 action. Rather, it commenced the instant reimbursement action after collection costs were paid.

Fuller responded by contending that its responsibility for collection costs was part and parcel of its single obligation under the Note. Thus, Fuller has asserted, as an affirmative defense in this action, that principles of res judicata preclude Bull & Bear from splitting its claims on the Note into two actions. In response, Bull & Bear has moved for summary judgment, claiming that the Court can strike Fuller's defenses and determine that he is liable for collection costs on the Note as a matter of law. Fuller has cross-moved, asserting that Bull & Bear is barred by principles of res judicata from bringing the instant suit.[3]

### DISCUSSION

#### A. *Claim–Splitting*

The Court first turns to consider whether Bull & Bear's cause of action for the reim-

---

**1.** The claims asserted in the May 1991 Action were raised by Fuller as defenses in the 1988 Action. Fuller's motion to treat the defenses as counterclaims and to sever them from the 1988 Action was denied by Justice Altman by Order dated September 11, 1991.

**2.** Bull & Bear also asserts that "a company with which Fuller is associated" has commenced a fourth suit in state court on these issues against

"a subsidiary of Bull and Bear." Plaintiff's Motion, at 22.

**3.** Bull & Bear has also moved the Court to strike Fuller's first affirmative defense. However, the motion to strike the first affirmative defense must be denied for failure to provide legal or factual support therefor.

bursement of collection costs incurred in the 1988 Action is barred by principles of res judicata. The doctrine of res judicata bars "a litigant from advancing in a new action all claims or defenses that were or could have been raised in a prior proceeding in which the same parties or their privies were involved and that resulted in a judgment on the merits." *Liona Corp. v. PCH Associates (In re PCH Associates)*, 949 F.2d 585, 594 (2d Cir.1991); *accord Harborside Refrigerated Services, Inc. v. Vogel*, 959 F.2d 368, 372 (2d Cir.1992).

■ The res judicata impact of a state-court judgment in a federal court is, in turn, controlled by the full faith and credit doctrine, which provides that "[t]he ... judicial proceedings of any court of any ... State ... shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State." 28 U.S.C. § 1738. Thus, in determining the res judicata impact of a state-court judgment, "a federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." *Migra v. Warren City School District Board of Education*, 465 U.S. 75, 81, 104 S.Ct. 892, 896, 79 L.Ed.2d 56 (1984); *accord Milltex Industries Corp. v. Jacquard Lace Co.*, 922 F.2d 164, 166 (2d Cir.1991); *Ruiz v. Commissioner of Department of Transportation*, 858 F.2d 898, 902 (2d Cir.1988).

To ascertain the content of New York law with respect to the preclusive impact that should be given to the 1988 Action, the Court turns by analogy to the methodology applied by the Second Circuit when sitting in diversity. The role of "a federal court sitting in diversity is to construe and apply state law as we believe the state's highest court would." *City of Johnstown v. Bankers Standard Insurance Co.*, 877 F.2d 1146, 1153 (2d Cir.1989). However, "[w]hen presented with an absence of controlling state authority, we must 'make an estimate of what the state's highest court would rule to be its law.' " *DeWeerth v.*

*Baldinger*, 836 F.2d 103, 108 (2d Cir.1987) (quoting *Stafford v. International Harvester Co.*, 668 F.2d 142, 148 (2d Cir.1981)), *cert. denied*, 486 U.S. 1056, 108 S.Ct. 2823, 100 L.Ed.2d 924 (1988); *accord Calvin Klein Ltd. v. Trylon Trucking Corp.*, 892 F.2d 191, 195 (2d Cir.1989). The Court therefore turns to consider whether failure to include a cause of action for reimbursement of collection costs in the initial suit on a note precludes a subsequent reimbursement action under New York law.

Where the maker of a promissory note undertakes to repay both the note and reasonable collection costs,

> [t]he promise to pay the amount of the note and the promise to pay the costs of collection constitute[ ] a single obligation, embodied in the negotiable instrument.... Since the indorsers' obligation, though consisting of two promises, is a single obligation which may be enforced in a single suit, the plaintiff [is] bound to assert his full claim in the earlier cause upon the note. He cannot split his cause of action.

*Roe v. Smyth*, 278 N.Y. 364, 369, 16 N.E.2d 366, 369 (1938); *accord Century Factors, Inc. v. New Plan Realty Corp.*, 41 N.Y.2d 1040, 396 N.Y.S.2d 179, 179–80, 364 N.E.2d 843 (1977).

There is an exception to this general rule, however, that applies when the note requires the maker to *reimburse* the payee for the costs incurred in collection on the note.

> The defendant's covenant is to "reimburse" the plaintiff for [collection] expenditures. Such a covenant is in the nature of a contract of indemnity against loss or damage upon which an action does not accrue until the loss or damage has been paid. Consequently, until the plaintiff had paid its attorneys after the ... litigation was concluded, it could not have maintained an action for reimbursement. Its failure to assert the claim previously, therefore, constitute no bar.

*379 Madison Avenue, Inc. v. Stuyvesant Co.*, 242 A.D. 567, 275 N.Y.S. 953, 955 (1st Dept.1934) (citations omitted), *aff'd*, 268 N.Y. 576, 198 N.E. 412 (1935); *see also*

*Ralston Purina Co. v. Arthur G. McKee & Co.*, 174 A.D.2d 1060, 572 N.Y.S.2d 125, 126 (4th Dept.1991) ("A cause of action for indemnity or contribution does not accrue ... until payment has been made by the party seeking to recover."); *F. W. Woolworth Co. v. Southbridge Towers, Inc.*, 101 A.D.2d 434, 476 N.Y.S.2d 299, 303 (1st Dept.1984); N.Y.C.P.L.R. § 213(2) (20 year limitations period for indemnification action).

However, the viability of this exception has been drawn into question by two more recent decisions of the New York Court of Appeals. The first of these cases, *Columbia Corrugated Container Corp. v. Skyway Container Corp.*, 37 A.D.2d 845, 326 N.Y.S.2d 208, 210 (2d Dept.1971), *aff'd*, 32 N.Y.2d 818, 345 N.Y.S.2d 1012, 299 N.E.2d 257 (1973), involved an action for fees brought subsequent to an action to recover on a lease that provided that fees were payable as additional rent. In *Columbia Corrugated*, the Appellate Division concluded that the second action was within the *Smyth / Century Factors* rule, which holds that bringing a second action to collect fees constitutes impermissible claim-splitting. The Second Department distinguished *379 Madison Avenue* as an action involving a contract for reimbursement, that did not control a case where the contract treated fees as a regular payment due under the lease. In a case involving virtually identical facts, *930 Fifth Corp. v. King*, 54 A.D.2d 636, 387 N.Y.S.2d 621, 622–23 (1st Dept.1976), *aff'd*, 42 N.Y.2d 886, 397 N.Y.S.2d 788, 366 N.E.2d 875 (1977), the Appellate Division again held that an attempt to bring an action to collect attorneys' fees after a suit to collect overdue rent has been taken to judgment constitutes impermissible claim-splitting where the lease provides that fees are to be treated as additional rent.

In affirming the decisions of the Appellate Division in *Columbia Corrugated* and *930 Fifth*, the Court of Appeals explicitly addressed the continuing viability of *379 Madison Avenue*. For example, in *Columbia Corrugated*, the court stated: "To the extent that the determinations below are inconsistent with *379 Madison Avenue* ...

that decision must be deemed overruled." 345 N.Y.S.2d at 1012, 299 N.E.2d at 257. Further, in *930 Fifth*, the court asserted that "[i]n *Columbia Corrugated* this court overruled *379 Madison Avenue* ..., and any attempt to distinguish that case on hypertechnical grounds is unavailing." 397 N.Y.S.2d at 789, 366 N.E.2d at 877.

Fuller cites the language of the Court of Appeals in these two opinions in support of the proposition that "all such cases are governed by the same legal rule: that a previously unasserted claim for attorneys' fees is barred." *See* Defendant's Response, at 11. However, closer examination of the facts of these cases undercuts Fuller's assertion that the "distinction of 'reimbursement' cases has twice been rejected by the New York Court of Appeals." *See* Reply Memorandum of Law in Support of Defendant's Motion for Summary Judgment, at 3.

Neither *Columbia Corrugated* nor *930 Fifth* concerned contracts requiring the liable party to reimburse the payee for collection costs. Rather, the contracts treated collection costs as a regular payment due under the contract. *See, e.g., 930 Fifth*, 397 N.Y.S.2d at 789, 366 N.E.2d at 877 ("All these facets of the lease are interrelated and constitute but separate integral parts of the whole. The lease entails a single obligation ..."). Thus, the admonitions of the Court of Appeals, indicating that *379 Madison Avenue* was overruled, did not address a contract like the one in the case at bar, where Fuller agreed to *reimburse* Bull & Bear for collections expenses. Rather, the language of the Court of Appeals appears to have been directed at an attempt by the litigants to focus attention on the term "incurred." *See 930 Fifth*, 387 N.Y.S.2d at 623 (in *Columbia Corrugated* "the Court interpreted the lease provision as allowing action to be brought after the fees were *incurred,* payment not being a prerequisite.") (emphasis in original).

Moreover, subsequent cases have not clarified the impact of the Court of Appeal's *dicta.* For example, in finding that a claim for reimbursement was premature

in an action on a primary liability, Judge Werker noted that the Court of Appeal's intent in *Columbia Corrugated* was "cryptic" and that he was "unable to give effect to [the] wishes [of the Court of Appeals] for the simple reason that I am unable to determine what has been overruled.... [In fact,] my confusion is shared by other judges." *City of New York v. Patton,* 450 F.Supp. 842, 846 (S.D.N.Y.1978). Further, the parties have not cited, and the Court has been unable to locate, any case in which a subsequent action for reimbursement of collection costs was barred as impermissible claim-splitting.

Although troubled by the language of the Court of Appeals indicating that *379 Madison Avenue* has been overruled, the Court believes that *379 Madison Avenue* has continuing vitality. *See, e.g., F.H. Krear & Co. v. Nineteen Named Trustees,* 810 F.2d 1250, 1269 (2d Cir.1987) (relying on *379 Madison Avenue*). Thus, were the Court forced to rule on this issue, its best estimate of New York law would be that a party is not precluded from bringing an action for reimbursement after an action on the primary liability has been taken to judgment.

### B. *Colorado River Abstention*

■ The Court next turns to consider plaintiff's assertion that it should abstain from exercising jurisdiction and remand this action to state court. The abstention doctrine is an exception to "the virtually unflagging obligation of the federal courts to exercise the jurisdiction given them." *Colorado River, supra,* 424 U.S. at 817, 96 S.Ct. at 1246. *Colorado River* abstention applies only in exceptional circumstances, and "rest[s] on considerations of '[w]ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation.'" *Id.* (quoting *Kerotest Manufacturing Co. v. C–O–Two Fire Equipment Co.,* 342 U.S. 180, 183, 72 S.Ct. 219, 221, 96 L.Ed. 200 (1952)); *accord Corcoran v. Ardra Insurance Co.,* 842 F.2d 31, 36 (2d Cir.1988).

The test for determining whether *Colorado River* abstention is appropriate requires consideration of six factors:

(1) assumption of jurisdiction over a *res;* (2) inconvenience of the forum; (3) avoidance of piecemeal litigation; (4) order in which the actions were filed; (5) the law that provides the rule of decision; and (6) protection of the federal plaintiff's rights.

*De Cisneros v. Younger,* 871 F.2d 305, 307 (2d Cir.1989) (citing *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.,* 460 U.S. 1, 23–27, 103 S.Ct. 927, 941–42, 74 L.Ed.2d 765 (1983), and *Colorado River, supra,* 424 U.S. at 817, 96 S.Ct. at 1246). In this factor analysis, "no single factor is necessarily decisive, and ... the test 'does not rest on a mechanical checklist, but on a careful balancing of the important factors as they apply in a given case, with the balance heavily weighted in favor of the exercise of jurisdiction.'" *Id.* at 307 (quoting *Moses H. Cone, supra,* 460 U.S. at 16, 103 S.Ct. at 937).

The Court now turns to apply these factors to the case at bar. As in *De Cisneros, supra,* 871 F.2d at 307, "[t]he first two [Colorado River] factors are not implicated in this [case], but the absence of jurisdiction over a *res,* and the convenience of the federal forum both point toward exercise of federal jurisdiction." *See Bethlehem Contracting Co. v. Lehrer/McGovern, Inc.,* 800 F.2d 325, 327 (2d Cir.1986). Although Bull & Bear asserts that "the first two factors ... are inapplicable to the facts of this case and militate neither for nor against abstention and remand," Plaintiff's Motion, at 17 n. 3, this claim is directly contrary to the Second Circuit's teaching in *De Cisneros,* and is rejected by the Court without further discussion.

In contrast, the next three factors all militate in favor of abstention. For example, the third factor, avoidance of piecemeal litigation, is strongly implicated in the instant action. As discussed above, Fuller has raised the same issues, as defenses, primary claims and counterclaims, in each of the three cases involving these parties and transactions. Thus, allowing this case

to proceed in federal court would pose a risk of inconsistent and contradictory results. *See De Cisneros, supra,* 871 F.2d at 308. The danger of inconsistent results is increased by the Court's belief that Bull & Bear's reimbursement action is not barred by the doctrine of res judicata. Thus, were the Court to retain jurisdiction, it would grant partial summary judgment in favor of the plaintiff with respect to liability for collection costs, leaving defendant's counterclaims, which are the subject of two actions in the New York Supreme Court, as the only issues remaining in this case beyond assessment of the expenses incurred in collection on the Note.

The Court next observes that Fuller is correct in his assertion that the instant action is the only case between the parties concerning collection costs. However, the ultimate measure of damages in this action is "inextricably linked," *General Reinsurance Corp. v. CIBA–Geigy Corp.,* 853 F.2d 78, 81 (2d Cir.1988), to the resolution of defendant's counterclaims, which are also pending before the state court. Moreover, "if a district court has the power to dismiss an action on the grounds of abstention it has the power to remand to the state court on those grounds." *Corcoran, supra,* 842 F.2d at 36. By remanding, the Court can transfer this case back to state court for consolidated treatment with the other actions implicating Fuller's counterclaims, allowing joint treatment of all of the remaining issues in this case and eliminating the risk of inconsistent results.

The fourth factor that must be considered in determining whether abstention is appropriate is the temporal sequence in which the various actions were filed. Where parallel actions are pending in state and federal court, but neither action has made substantial progress, this factor bears relatively little weight. *See General Reinsurance, supra,* 853 F.2d at 82. However, consideration of the universe of actions between these parties reveals that the state courts have been involved in this controversy for far longer than the federal action has been pending. Justice Altman has been involved in the dispute between the parties for almost four years, and Full-

er's counterclaims in the instant case appear to have been raised, in the first instance, in the 1988 Action. Further, the fact that the instant case is related to more than one state court action militates in favor of abstention. *See Telesco v. Telesco Fuel and Masons' Materials, Inc.,* 765 F.2d 356, 363 (2d Cir.1985).

While the third and fourth factors point toward the conclusion that this is an appropriate case for abstention, the fifth factor, concerning the source of the rule of decision, is the decisive factor in this case. Given that state law controls in all diversity actions, the mere presence of an issue of state law is not sufficient to justify *Colorado River* abstention. *See Bethlehem Contracting, supra,* 800 F.2d at 328. Nevertheless, "[a]lthough the absence of federal issues does not require the surrender of jurisdiction, it does favor abstention where 'the bulk of the litigation would necessarily revolve around the state-law ... rights of [the] ... parties.'" *General Reinsurance, supra,* 853 F.2d at 82 (quoting *Moses H. Cone,* 460 U.S. at 23 n. 29, 103 S.Ct. at 941 n. 29). The case at bar implicates primary issues of state law with respect to contractual interpretation and the proper sequence of actions for recovery on a promissory note. Moreover, the law in this area is particularly unsettled, and Fuller's assertion that "*379 Madison Avenue* was overruled because the Court of Appeals says it is [sic]," Defendant's Response, at 11, simply overlooks the ambiguity that currently exists.

This action does not involve a complex state regulatory apparatus like that implicated in *Corcoran, supra,* 842 F.2d at 37. Nevertheless, the absence of controlling authority in this area indicates that this suit involves "a novel state law theory." *Telesco, supra,* 765 F.2d at 363. Moreover, the confusion regarding the proper interpretation of state law convinces the Court that this case "would best be determined in a setting lending itself to prompt review by New York's appellate courts." *Young v. United States Department of Justice,* 882 F.2d 633, 644 (2d Cir.1989), *cert. denied,* 493 U.S. 1072, 110 S.Ct. 1116, 107 L.Ed.2d

**394**

1023 (1990). Especially compelling is the fact that "[d]eferral by the federal court [will] guarantee that it will not misinterpret New York law." *De Cisneros, supra,* 871 F.2d at 309.

Finally, the Court turns to the sixth factor, the protection of the rights of the party seeking to proceed in federal court. Where a litigant faces a threat of prejudice by being required to proceed in state court, this factor weighs heavily in favor of the exercise of jurisdiction. *See De Cisneros, supra,* 871 F.2d at 309; *Bethlehem Contracting, supra,* 800 F.2d at 328. However, if the case at bar is remanded to the state court, all of the claims between the parties will be heard in one forum, reducing the risk of inconsistent results and allowing for a comprehensive resolution of this conflict before a court that is familiar with these parties and that is particularly well situated to resolve the open issue of New York law. *See General Reinsurance, supra,* 853 F.2d at 82 (abstention favored where all issues are joined in state court action). Moreover, Fuller has conceded that he will not suffer prejudice by proceeding in state court. *See* Defendant's Response, at 21. The Court therefore finds that the sixth factor weighs neither in favor of nor against abstention.

Based upon this factor analysis, the Court holds that this is an appropriate case for *Colorado River* abstention. Given the strong presumption in favor of the exercise of federal jurisdiction, this is not a decision that is taken lightly. Nevertheless, the long state court history of this series of actions, the existence of parallel actions posing the threat of inconsistent results and the pendency of an unresolved issue of controlling state law convince the Court that this is one of those exceptional cases where interests of "conservation of judicial resources and comprehensive disposition of litigation," *Colorado River, supra,* 424 U.S. at 817, 96 S.Ct. at 1246, militate in favor of abstention.

## CONCLUSION

For the foregoing reasons, the Court hereby abstains from the exercise of its jurisdiction pursuant to the principles set forth in *Colorado River.* This action is hereby remanded to the Supreme Court of the State of New York, New York County.

SO ORDERED.