**AMNEX, INC., Plaintiff,**

v.

**Robert A. ROWLAND, Donald D. Simmons and Carl Michael Moehle, Defendants.**

**No. 98 Civ. 2103(DNE).**

United States District Court, S.D. New York.

Oct. 30, 1998.

David S. Hammer, New York City, for Plaintiff.

Casey L. Dobson and Sara M. Wilder, Scott, Douglass & McConnico, L.L.P., Austin, TX, for Defendant Robert A. Rowland.

Randy Howry, Herman & Howry, L.L.P., Austin, TX, for Defendants Carl Michael Moehle and Donald D. Simmons.

## OPINION & ORDER

EDELSTEIN, District Judge.

Plaintiff, AMNEX, Inc. ("AMNEX") filed its Complaint on March 23, 1998 against Defendant Robert A. Rowland ("Rowland"), the former majority shareholder and Chairman of the Board of Directors of a Texas telecommunications company known as Capitol Network Systems, Inc. ("CNSI"). The Complaint alleged state common law claims of breach of contract and fraud in the inducement, and violations of Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and Rule 10b–5, 17 C.F.R. § 240.10b–5, in connection with AMNEX's June 28, 1996 corporate acquisition of CNSI. Complaint ¶¶ 1–2. On June 9, 1998, AMNEX filed an Amended Complaint joining Defendants Donald D. Simmons ("Simmons") and Carl Michael Moehle ("Moehle") who were among the several sellers of CNSI.

Defendants Rowland, Simmons and Moehle move this Court to abstain from deciding Plaintiff's common law fraud and breach of contract claims in favor of pending litigation and to dismiss Plaintiff's federal securities claim as time-barred. Memorandum of Law in Support of Defendant Robert A. Rowland's Motion to Dismiss, "Rowland Br." at 1–2.

### Background

AMNEX is a publicly traded holding company organized under the laws at the State of New York. Amended Complaint ¶ 1. Through its subsidiaries, AMNEX provides a variety of telecommunications services throughout the United States and abroad. *Id.* In June 1996, AMNEX purchased CNSI from Defendants Rowland, Simmons and Moehle, as well as from other stockholders. In connection with the sale, AMNEX allegedly promised Rowland that it would guaranty a promissory note—with a principal balance of $1,197,691.82 (the "Rowland Note")—payable to Rowland from CNSI. Rowland Br. at 2. Rowland further asserts that CNSI later defaulted on the Rowland Note and AMNEX failed to honor its guaranty. *Id.*

On July 11, 1997, Rowland sued AMNEX and CNSI in Cause No. 97–07955, *Rowland v. AMNEX, Inc. and Capital Network System, Inc.*, in the 353rd Judicial District Court for Travis County, Texas (the "Texas Litigation") to recover on the Rowland Note. AMNEX affirmatively defended against Rowland's claims in the Texas Litigation by contending that Rowland and the other sellers of CNSI made material misrepresentations to AMNEX that amounted to fraud in the inducement to purchase CNSI. *See* Affidavit of Clifford Thau in Support of Motion

to Dismiss ("Thau Aff.") at Exhibits "B" and "C".

On March 23, 1998, AMNEX commenced the instant case. All three Defendants, prior to answering either the Complaint or the Amended Complaint, filed their present motions asking this Court to abstain from deciding Plaintiff's common law fraud and breach of contract claims in deference to the Texas Litigation, and to dismiss as untimely the federal securities claim. Rowland Br. at 1–2; Memorandum of Law in Support of Defendant Carl Michael Moehle's Motion to Dismiss at 1–2; Memorandum of Law in Support of Defendant Donald D. Simmons' Motion to Dismiss at 1–2.

### Discussion

#### A. Federal Claim

■ The third cause of action in AMNEX's Amended Complaint alleges that the Defendants induced AMNEX to purchase CNSI's shares at an artificially high price, violating Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b–5 promulgated thereunder. Amended Complaint ¶¶ 58–64. The key allegation in AMNEX's claim is that the sellers of CNSI misrepresented the condition of CNSI's Mexican operations in the months leading up to the sale. Specifically, AMNEX alleges that the sellers of CNSI concealed that at least fifty-two Mexican customers had canceled their contracts with CNSI during the Spring or Summer of 1996, prior to closing the sale of CNSI to AMNEX. Amended Complaint at ¶ 7. In response, Defendants argue that this Court should dismiss AMNEX's federal securities claim as time-barred, stating that AMNEX failed to bring its 10b–5 claim within one year after it discovered facts that allegedly support the federal securities claim. Rowland Br. at 9.

The rules for determining the timeliness of 10b–5 claims are well established. "Litigation instituted pursuant to § 10(b) and Rule 10b–6 … must be commenced within one year after the discovery of the facts constituting the violation and within three years

after such violation." *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson,* 501 U.S. 350, 364, 111 S.Ct. 2773, 115 L.Ed.2d 321 (1991). AMNEX filed this lawsuit on March 23, 1998. Therefore, AMNEX's federal securities claims wold be time-barred if AMNEX discovered or should have discovered the facts supporting the claims before March 23, 1997.

AMNEX's Amended Complaint states that:

> After the Acquisition [of CNSI] was completed on June 28, 1996, the trend of customer losses, broker resignations, disconnections, confiscations, and other regulatory pressures mounted, culminating in a massive drop in revenue in *August and September 1996.* AMNEX, unaware of its new acquisition's pervasive problems, had assumed that CNSI's business would continue running smoothly in the months immediately following the Acquisition. *By October of 1996, however, AMNEX had become painfully aware that the revenue projections which CNSI had presented during the due diligence period had ignored the many incipient threats to CNSI's operations.* AMNEX expected the CNSI acquisition to add $40 million in revenue and $2.5 million in earnings. Instead, AMNEX has lost at least $3,500,000 as a result of acquiring CNSI.

Amended Complaint at ¶ 54 (emphasis added). Furthermore, in the February 12, 1998 AMNEX Affidavit, Selena Sierra [1] ("Sierra"), who began working for AMNEX in June 1996, stated that: (1) she first saw and read the allegedly undisclosed letter from the Secretaria de Communicaciones y Transportes in CNM/CNSI's Mexico City offices in February 1996, (2) she knew that CNM/CNSI had "serious problems in conducting its operations [arising from] legal and regulatory disputes" with Mexican governmental agencies, (3) she knew of alleged CNSI smuggling and alleged "serious difficulties" that CNSI was having with the Mexican tax authority, (4) she knew that CNM/CNSI allegedly be-

---

1. Selena Sierra was the former General Manager of International Support Services for Capital Network Mexico ("CNM"), a subsidiary of CNSI, and the current Manager of Customer Service for AMNEX.

gan to lose customers in late 1995 and early 1996, and most importantly, (5) she began having "conversations with various executives" at AMNEX about these matters in *July 1996*, who expressed "surprise and disappointment." *See* Thau Aff., Ex. "C" at ¶ 6–21.

As a result, AMNEX created a "task force" in October 1996 to determine why revenues from CNSI's Mexican operations were lower than expected. *See* Thau Aff., Ex. "B" at ¶ 32. On October 10, 1998, the task force compiled the Property Cancellation List (the "List"). *Id.* at ¶ 8. The List revealed to AMNEX "the degree of customer flight" from CNSI, and forms the gravamen of AMNEX's 10b–5 Claim. Amended Complaint at ¶ 31. Nevertheless, despite having learned by October 1996 that its revenues from CNSI's Mexican operations were substantially less than expected, and having read by October 1996 the List detailing CNSI customers that were allegedly lost before the date of the merger, AMNEX did not file its Complaint until almost seventeen months later in March 1998.

Essentially, AMNEX possessed the requisite knowledge to permit the statute of limitations period to begin running. In *Dodds v. Cigna Securities, Inc.*, 12 F.3d 346, 353 (2d Cir.1993), *cert denied*, 511 U.S. 1019, 114 S.Ct. 1401, 128 L.Ed.2d 74 (1994), the Second Circuit explained that actual notice of all aspects of an alleged 10b–5 claim is not required to begin the limitations period under the discovery rules set forth in *Lampf.* "A plaintiff in a federal securities case will be deemed to have discovered fraud for purposes of triggering the statute of limitations when a reasonable investor of ordinary intelligence would have discovered the existence of the fraud." *Id.* The Court further declared that "when circumstances would suggest to an investor of ordinary intelligence the probability that [it] has been defrauded, a duty of inquiry arises, and knowledge will be imputed to the investor who does not make such an inquiry."

Plaintiff asserts that its 10b–5 claim should not be time-barred because it was only on inquiry notice in October 1996 and at that time had only learned of facts that suggested the *probability* of fraud. Plaintiff's Memorandum of Law in Opposition to Defendant's Motion to Abstain and to Dismiss ("AMNEX Br.") at 12. AMNEX argues that once it was aware of facts that were sufficiently probative of fraud it was under a duty only to use reasonable diligence in investigating further, and should be afforded reasonable opportunity to discover the truth. *Id.* at 12–13; *see Freschi v. Grand Coal Venture*, 767 F.2d 1041, 1047 n. 7 (2d Cir.1985) (stating that if an investor responds to the "storm warnings" with due diligence, the statute of limitations should not begin to run until the investor has a reasonable opportunity to discover the truth).

What constitutes reasonable opportunity to discover the truth necessarily turns on the accessibility of the relevant facts. Where the facts are inaccessible, because they are concealed, complicated, or otherwise difficult to obtain, courts have been willing to toll the limitations period until the plaintiff actually discovers the fraud. *See Robertson v. Seidman & Seidman*, 609 F.2d 583, 593 (2d Cir. 1979). In *Dodds*, the Second Circuit explained that "equitable tolling will stay the statute of limitations only so long as the plaintiff has 'exercised reasonable diligence *in seeking to learn the facts* which would disclose fraud.'" *Dodds*, 12 F.3d at 350 (citation omitted emphasis added). The doctrine, therefore, only tolls the limitations period while a plaintiff, who has not had an opportunity to discover the facts constituting the alleged fraud, conducts an investigation. Thus, the limitations period begins to run once, during the course of the investigation, the potential 10b–5 claimant gains knowledge of facts that would suggest to an investor of ordinary intelligence that it had been defrauded. A 10b–5 plaintiff that has actual knowledge of the essential facts cannot claim that benefit of the equitable tolling doctrine for the entire period of time it investigates.

AMNEX's Amended Complaint and its Affidavits demonstrate that AMNEX's knowledge was far more than mere "storm warnings" as early as the end of October 1996. At that time, AMNEX's assembled task force issued the List, which made AMNEX "painfully aware that the revenue projections

which CNSI had presented during the due diligence period had ignored the many incipient threats to CNSI's operations." Amended Complaint at ¶ 54. Thus, by the end of October 1996, AMNEX had actual knowledge of the essential facts it claims support its 10b–5 claim. Once AMNEX had actual knowledge of the essential facts underlying its claim, it could no longer receive the benefit of an equitable tolling doctrine that tolls limitations only for plaintiffs who have had no opportunity to learn the essential facts. Therefore, because Plaintiff filed its Complaint on March 23, 1998, more than one-year from the date it was aware of the facts supporting its federal securities claim, this Court finds that Plaintiff's alleged 10b–5 claim is time-barred and is dismissed with prejudice.

### B. Abstention

■ Defendants moved this Court to stay or dismiss the first and second causes of action in the Amended Complaint pursuant to the abstention doctrine set forth in *Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976). Under the *Colorado River* abstention doctrine, where there is concurrent state and federal litigation arising out of the same subject matter, a federal district court may dismiss or stay the proceeding based on considerations of " '[w]ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation.' " *Id.* at 817, 96 S.Ct. 1236 (quoting *Kerotest Mfg. Co. v. C–O–Two Fire Equipment Co.,* 342 U.S. 180, 183, 72 S.Ct. 219, 96 L.Ed. 200 (1952)). Defendants argue that this Court should abstain because Rowland previously commenced an action in Texas—the Texas Litigation—in which AMNEX raised the counterclaims of, *inter alia,* breach of contract, breach of express warranties, and fraud in the inducement.

■ The threshold inquiry when a *Colorado River* abstention claim is raised is whether or not the state action and the instant federal action are concurrent or parallel such as to render the consideration of possible abstention appropriate. *See id.* "Federal and state proceedings are 'concurrent' or 'parallel' for purposes of abstention when the . . . proceedings are essentially the same; that is, there is an identity of parties, and the issues and relief sought are the same." *National Union Fire Ins. Co. of Pittsburgh v. Karp,* 108 F.3d 17, 22 (2d Cir.1997).

■ Plaintiff argues that Defendants have failed to demonstrate that either of the two elements of "concurrence"—identity of issues and of parties—exists between the present case and the Texas Litigation. AMNEX Br. at 5. First, Plaintiff contends that the Texas Litigation is "a note collection" action, and that "[w]hile fraud in the inducement has been raised as a defense, defendants have failed to show that all of the claims of fraud and breach of contract which plaintiff has asserted in the present federal action necessarily will be decided in the Texas Litigation." *Id.* Second, Plaintiff claims that Defendants have failed to show an identity of the parties, because "neither Simmons nor Moehle is a party to the Texas Litigation, and CNSI—which is a party to the Texas Litigation—has not been joined here." *Id.* at 6.

Any assertion that the present action and the Texas Litigation are not essentially the same proceeding is disingenuous. On June 25, 1998, AMNEX filed Defendant AMNEX, Inc.'s Counterclaim against Robert A. Rowland, alleging the identical facts that are the basis of the instant federal action and seeking recovery for breach of contract, breach of warranty, fraud in the inducement, fraud in connection with a stock transaction, and negligent misrepresentation. *See* Affidavit of Casey Dobson in Support of Motions to Dismiss ("Dob.Aff."), Ex. "A". Thus, whether raised as affirmative defenses or as affirmative claims, the core issues that AMNEX's argues in the Texas Litigation and in this suit are identical. Furthermore, even if Plaintiff could establish differences between the two cases, the *Colorado River* doctrine does not require that the cases be exactly the same. *See Canaday v. Koch,* 608 F.Supp. 1460, 1475 (S.D.N.Y.), *aff'd,* 768 F.2d 501 (2d Cir.1985). As Plaintiff admits, *see,* AMNEX Br. at 6 n. 3, the *Colorado River* abstention doctrine may be applied to cases in which there is less

than precise and technical identity of the parties, so long as there is a strong showing that the interests of the parties in each of the suits are "congruent". The congruence of the Defendants' interests is clear—they all wish to defeat AMNEX's identical breach of contract and fraud claims against them, claims that arise out of the same alleged misrepresentations and contractual breaches.

This Court noted, in *Weiser v. Koch*, that federal and state suits need not be identical in every aspect. *Weiser*, 632 F.Supp. 1369, 1386 (S.D.N.Y.1986). This Court found that although the federal suit and a similar state-court suit at issue in *Weiser* were "not parallel in the sense that the parties are the same or that all of the issues are identical," they were "parallel in the sense that the crucial threshold issue ... [would] be decided imminently." *Id.* Thus, "[r]ather than apply a rigid rule that entire lawsuits must be identical, [this Court found] that the 'parallel' requirement is satisfied when the main issue in the case is the subject of pending litigation." *Id.* In this case, the main issue—whether the CNSI sellers fraudulently induced AMNEX to purchase CNSI or breached their stock purchase agreement—will be decided by the Texas Litigation, thereby satisfying the parallel or concurrent proceeding requirement.

■ Once the threshold issue of concurrence between the federal case and the state case has been established, additional factors may be considered in determining whether to abstain in favor of a state proceeding. In determining whether to abstain under the *Colorado River* doctrine, this Court may consider the following factors: (1) the assumption of jurisdiction by either court over any *res* or property, (2) the inconvenience of the federal forum, (3) the avoidance of piecemeal litigation, (4) the order in which jurisdiction was obtained, (5) whether state or federal law supplies the rule of decision, and (6) whether the state court proceeding will adequately protect the rights of the party seeking to invoke federal jurisdiction. *See Moses H. Cone Memorial Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 19–26, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983); *see also Burnett v. Physician's Online, Inc.* 99 F.3d 72, 77 (2d Cir. 1996); *Bethlehem Contracting Co. v. Lehr-*

*er/McGovern*, 800 F.2d 325, 327 (2d Cir. 1986).

■ It is conceded that the initial factor does not apply here as Defendants make no contention that the Texas state court has assumed jurisdiction over any *res* or property. Nevertheless, it does not make this factor a matter of neutrality as to the propriety of abstention. As the Second Circuit stated in *DeCisneros v. Younger*, 871 F.2d 305 (2d Cir.1989), "the absence of jurisdiction over a *res* [by the state court] ... points toward exercise of federal jurisdiction." *DeCisneros*, 871 F.2d at 307. Thus, the first factor weighs in favor of the exercise of jurisdiction in this case.

■ The relevant issues in considering the second factor, whether a forum is inconvenient, are: (1) the place where the operative events occurred, (2) the convenience of the parties; (3) the convenience of the witnesses, (4) the availability of process to compel the attendance of unwilling witnesses, (5) the cost of obtaining witnesses' presence, (6) the familiarity with governing law, (7) trial efficiency, and (8) the interest of justice. *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508, 67 S.Ct. 839, 91 L.Ed. 1055 (1947). Plaintiff argues that the contractual language of the Stock Purchase Agreement between AMNEX and Defendants that governed the acquisition of CNSI precludes any argument by the Defendants that New York is an inconvenient forum. AMNEX Br. at 8. Paragraph 16.8 of the Stock Purchase Agreement states that "each of Purchaser and Sellers ... irrevocably waives any objection it may now or hereinafter have as to the venue of any such proceeding brought in [any court of New York State located in the City of New York, or in the United States District Court for the Eastern or Southern District of New York] or that such a court is an inconvenient forum." *See* Affirmation of David S. Hammer, Esq. Counsel to Plaintiff ("Hammer Aff.") at ¶ 3, Ex. "A".

Nevertheless, the language in the Stock Purchase Agreement does not foreclose this Court from considering the convenience of the forum as a factor along with all the other factors in its analysis of Defendants' *Colora-*

*do River* abstention motions. Even ignoring the inconvenience to the Defendants, as Plaintiff suggests the Stock Purchase Agreement requires, the remaining factors still point out that the Southern District of New York is an inconvenient forum for this case. In this case, most of the operative facts giving rise to this dispute occurred in Austin, Texas, and most of the witnesses that the parties may call to testify at trial live in or near Texas. As AMNEX's counsel informed this Court at the June 2, 1998 pre-motion conference, the closest witness to New York that AMNEX intends to call resides in Orlando, Florida. *See* Transcript of June 2, 1998 Pre–Motion Conference, at 27. Thus, the second factor in the *Colorado River* abstention analysis weighs in favor of abstention.

▮ As in many *Colorado River* cases, the most important factor weighing in favor of abstention in this case is the "desirability of avoiding piecemeal litigation." *See, e.g., Arkwright–Boston Mfrs. Mut. Ins. Co. v. City of New York,* 762 F.2d 205, 210–211 (2d Cir. 1985) noting that, "[a]s in *Colorado River,* the danger of piecemeal litigation is the paramount consideration"; *Bull & Bear Group, Inc. v. Fuller,* 786 F.Supp. 388, 392 (S.D.N.Y. 1992) finding abstention was appropriate where, "avoidance of piecemeal litigation [was] strongly implicated". The key issue in this case is whether AMNEX was fraudulently induced to purchase CNSI. Absent abstention by this Court, both the Texas state court and this Court will decided that pivotal issue. As the Second Circuit noted in *Arkwright,* " '[t]he existence of such concurrent proceedings creates the serious potential for spawning an unseemly race to see which forum can resolve the same issues first [which would be] prejudicial, to say the least, to the possibility of reasoned decision-making by either forum.' " *Arkwright–Boston,* 762 F.2d at 211 (quoting *Arizona v. San Carlos Apache Tribe of Arizona,* 463 U.S. 545, 103 S.Ct. 3201, 77 L.Ed.2d 837 (1983)); *see also Inn Chu Trading Co. Ltd. v. Sara Lee Corp.,*

810 F.Supp. 501, 508 (S.D.N.Y.1992) (holding that abstention was appropriate where the "linchpin" of the claims in the federal suit was the same issue at the core of the state court action); *Bull & Bear,* 786 F.Supp. at 392–93 (finding that abstention was appropriate because "allowing [the] case to proceed in federal court would pose a risk of inconsistent and contradictory results").

Plaintiff argues that "[s]ince Simmons and Moehle are not parties to the Texas Litigation, plaintiff's claims as to them will still have to be litigated separately, regardless of whether or not this Court abstains in favor of the Texas Litigation." AMNEX Br. at 8. However, Simmons and Moehle can easily be joined as defendants to AMNEX's claims in the Texas Litigation.[2] Thus the third *Colorado River* factor weighs in favor of abstention.

▮ The next factor—the order in which jurisdiction was obtained—is not to be decided on the basis of which party won a race to the courthouse, but rather, it is considered "in a common-sense manner by examining how much progress has been made in each forum." *Arkwright–Boston,* 762 F.2d at 211, *see also Inn Chu Trading,* 810 F.Supp. at 508 (finding that *Colorado River* abstention was appropriate where state court suit was "actively progressing" and was filed seven months before the federal suit). Rowland filed the Texas Litigation in July 1997, more than eight months before this suit was filed in March 1998. Plaintiff offers no argument as to this issue, and the Texas state court's docket sheet reveals that substantial progress has been made in that suit. *See* Thau. Aff.Ex. "D". Thus, abstention in this case would promote judicial efficiency as the state action has progressed further than the present action.

▮ The next pertinent factor is whether state or federal law supplies the rule of decision. With the exception of AMNEX's federal securities claim, there are no federal law

---

**2.** In papers to this Court, Defendants state that "Plaintiff's concerns about the potential applicability of statutes of limitations related to Moehle and Simmons can be alleviated by stipulating that the date of filing of Plaintiff's claims against each Defendant in this action will apply if those claims are asserted against Defendants in the Texas Litigation." Defendants' Reply Memorandum of Law in Further Support of Defendants' Motions to Abstain and to Dismiss at 9.

issues in this case. Because, as previously discussed, AMNEX's federal securities claim is time-barred as a matter of law, its existence does not weigh in the balance. *See supra,* part A. "Although the absence of federal issues does not require the surrender of jurisdiction, it does favor abstention where 'the bulk of the litigation would necessarily revolve around state law ... rights of [the] ... parties.'" *General Reinsurance Corp. v. CIBA–Geigy Corp.,* 853 F.2d 78, 82 (2d Cir. 1988) (quoting *Moses H. Cone,* 460 U.S. at 23 n. 29, 103 S.Ct. 927.) AMNEX's remaining claims in this case are common law claims and compulsory counterclaims in the Texas Litigation. State law supplies the rule of decision for those claims, and therefore, this factor points toward abstention in this case.

 The last *Colorado River* factor is whether the state court proceeding will adequately protect the rights Plaintiff is seeking to vindicate in this lawsuit. Plaintiff argues that "the Texas court cannot render a judgment against Simmons and Moehle even on state law claims, because those individuals— though defendants in the present case—are not parties to the Texas Litigation." AMNEX Br. at 10. As previously mentioned, Defendants Simmons and Moehle can easily be joined in the Texas Litigation as both reside in Austin, Texas. *See supra* n. 2.

Other than its concern that it may be prejudiced in its ability to pursue its rights against Defendants Simmons and Moehle by reason of the operation of the statute of limitations, AMNEX has not made this Court aware of any conceivable prejudice against AMNEX should its claims be decided by the Texas state court rather than this Court. Considering Defendants' willingness to stipulate that the date of filing of Plaintiff's claims against each Defendant in this action will apply in the Texas Litigation and the adequacy of the remedies available to AMNEX in the Texas Litigation, this Court finds that the final factor points in favor of abstention.

Based upon the forgoing analysis, this Court holds that this is an appropriate case for *Colorado River* abstention. Despite the strong presumption in favor of the exercise of federal jurisdiction, the *Colorado River* factors demonstrate that this is an exceptional case where the interests of "conservation of judicial resources and comprehensive disposition of litigation" militate in favor of abstention. *Colorado River,* 424 U.S. at 817, 96 S.Ct. 1236.

## C. Conclusion

For the preceding reasons, Plaintiff's federal securities claim is dismissed with prejudice, and this Court hereby abstains from the exercise of jurisdiction over Plaintiff's state common law claims by dismissing those claims without prejudice.

SO ORDERED.